**Mersadies Bonilla**
**Pro Se**
**921 Pleasant Valley Avenue #307**
**Mount Laurel, New Jersey 08054**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MERSADIES BONILLA, | : | |
|     Plaintiff | : | |
|         Vs. | : | CIVIL ACTION |
| AMERICAN HERITAGE FEDERAL | : | No: 20-2276 |
| CREDIT UNION, BRUCE FOULKE (INDV. | : | |
| CAPACITY), DANIELLE BASICH (INDV. | : | AMENDED COMPLAINT |
| CAPACITY), BRANCH MANAGER UNKNOWN | : | |
|     Defendants | : | |

_____

## AMENDED COMPLAINT AT LAW AND IN EQUITY

AND NOW, comes the Plaintiff, Mersadies Bonilla, *pro se*, to file the instant complaint and in support thereof avers the following:

### INTRODUCTION

1. Plaintiff is seeking relief under a variety of federal consumer credit and banking statutes and regulations and Pennsylvania law relating to their credit union's handling of various transactions ranging from August 2016 to this present moment in June 2020 that have resulted in a substantial amount of harm / damage to the Plaintiff. Plaintiff has been granted leave to file an amended complaint in this action in an order dated May 26, 2020 due to first-file rule and consolidation of 20-2053 and this case. Plaintiff hereby files the instant amended complaint linking each of the claims to each of the individual Defendants as referenced in the Court's Memorandum also issued on 20-2053 dated May 19th, 2020.

### JURISDICTION AND VENUE

2. This is a civil action authorized under 28 U.S.C. § 1331; the Truth in Lending Act's Fair Credit Billing Act; Regulation Z; Regulation V; Regulation P, 42 PaC.S.A. §7102; 42 Pa. Cons. Stat. §§ 8341-8345; 12 U.S.C. §§ 5531; 15 U.S.C. §§ 1692, 15 U.S.C. §§ 1681, 15 U.S.C. §§

1693, 15 U.S.C. §§1601-1667 and Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §2201 and §2202.

3. Venue is proper as the Plaintiff is a resident of this district and the Defendants maintain their principal office for administration of all business in the Commonwealth of Pennsylvania at 2060 Red Lion Road, Philadelphia, PA 19115 and the series of transactions giving rise to the instant matter have taken place within the Eastern District of Pennsylvania.

## PARTIES

4. PLAINTIFF - Mersadies Bonilla has been a member / shareholder of American Heritage Federal Credit Union (hereinafter AHFCU) since 2016. Plaintiff has had one share account and one credit card account with AHGCU being savings account and secured credit card accounts. Plaintiff Bonilla is an individual and citizen of the Commonwealth of Pennsylvania with an address of 832 E. Locust Avenue, Philadelphia, PA 19138 with a United States Postal Service mailing address of 921 Pleasant Valley Avenue #307, Mount Laurel, New Jersey, 08054.

5. DEFENDANT - American Heritage Federal Credit Union is a federally chartered credit union and falls within the meaning of lender as defined by the referenced statutes and regulations referenced earlier with a principal place of business at 2060 Red Lion Road, Philadelphia, Pennsylvania 19115.

6. DEFENDANT - Bruce Foulke (Individual Capacity) is the individual acting as President and Chief Executive Officer of American heritage Federal Credit Union with a principal address of 2060 Red Lion Road, Philadelphia, Pennsylvania 19115.

7. DEFENDANT - Danielle Basich is an individual acting as a Risk Compliance Officer at American Heritage Federal Credit Union with a principal address of 2060 Red Lion Road, Philadelphia, Pennsylvania, 19115.

8. DEFENDANT - There is an unknown defendant that is acting as the Branch manager of the American Heritage Federal Credit Union with a principal address of 2060 Red Lion Road, Philadelphia, Pennsylvania 19115 whose name is currently unknown to Plaintiff and will be

amended into the complaint upon the acquisition of this information through the process of discovery.

## **STATEMENT OF FACT**

9. Plaintiff is a member of the American Heritage Federal Credit Union with a savings account and a secured credit card account. Plaintiff is contesting three transactions they claim the Credit Union and its employees either attempted to collect as a debt and/or inaccurately reported to credit reporting agencies:

> • A savings share account and one credit account in the amounts of $1,904 and $3,334 Defendants reported to TransUnion, Experian, and Equifax as delinquent from July 2019 to early April 2020.[3]
>
> • Defendants reported $4,818.35 to "Check Systems, Inc." as a charge-off on Ms. Bonilla's savings account beginning July 2019.[4]
>
> • "Amount of $600.00 of secured money (property Account number 622661) taken and there is no present right to security funds and/or interest on account or money received by AHFCU January 20th of 2016 from Plaintiff."[5]

These events are all actions taken by the Defendant Organization and its agents in their individual capacities unlawfully and in violation of various federal and state statutes and regulations causing substantial harm to the Plaintiff over the previous years unnecessarily, recklessly, and with gross disregard to rights and interests of the Plaintiff.

**A. The August 2016 disputed transaction.**

10. In July 2016, someone deposited money from another shareholder's account into Ms. Bonilla's account. Ms. Bonilla alleges the Credit Union's unidentified branch manager, "acting outside their authority," contacted the Philadelphia Police Department to report fraud on the account. A state court issued an arrest warrant for Ms. Bonilla in August 2016. Ms. Bonilla denies wrongdoing with regard to the monies deposited into her savings account at the Credit Union.

11. The public docket reflects the Commonwealth brought charges against Ms. Bonilla in the

Philadelphia County Court of Common Pleas on August 19, 2016 relating to the money the Credit Union believed was fraudulently deposited into her account.9 The public docket shows the Commonwealth charged Ms. Bonilla with forgery; theft by unlawful taking-movable property; theft by deception–false impression; receiving stolen property; identity theft; criminal use of a communication facility; access to a device used to obtain or attempt to obtain property or services; and securing execution of documents by deception under Pennsylvania law.

**B. The dismissal of Plaintiff's first lawsuit.**

12. Before resolution of her criminal charges, Plaintiff sued the Credit Union before us in Bonilla v. American Heritage Federal Credit Union. They alleged in August 2016, someone made three deposits to her savings account totaling $5,600 from the account of Joyce Eubanks, another Credit Union member. Ms. Eubanks contested the validity of the $5,600 in transfers and the Credit Union, along with Philadelphia Police, lacked to thoroughly investigate the transfers as fraudulent. In response to what it considered fraudulent activity, the Credit Union "reversed" the $5,600 transfer to Ms. Bonilla's savings account on September 7, 2016.13 After debiting $5,600 against Ms. Bonilla's savings account, her account had an ending balance of negative $3,334.92. The Credit Union charged off the overdrawn savings account in December 2016 with a negative balance of $3,334.92.14 The Credit Union first reported the charged off savings account to credit reporting agencies in January 2017. Ms. Bonilla filed a Complaint against the Credit Union on August 3, 2018, a First Amended Complaint on August 24, 2018, a Second Amended Complaint on August 27, 2018, and a Third Amended Complaint on September 12, 2018. The Court granted the Credit Union's motion to dismiss with prejudice all claims relating to the August 2016 transactions and without prejudice to allow Ms. Bonilla to file an amended complaint to plead timely and plausible claims regarding an alleged overdraft protection transaction.

13. Ms. Bonilla filed a Fourth Amended Complaint alleging the Credit Union violated federal

4

law by opening a "Deposit Account Overdraft Protection Account" added to her credit report in the amount of $3,334 beginning in August 2018.17 She claimed the Credit Union's conduct violated the Electronic Funds Transfer Act ("EFTA"),18 its implementing Regulation E,19 the Truth in Lending Act, ("TILA")20 and the Fair Credit Billing Act ("FCBA")21 and its implementing Regulation Z. On April 4, 2019, the Court granted the Credit Union's motion for judgment on the pleadings, finding EFTA and Regulation E did not apply to Ms. Bonilla's challenge to the Credit Union's intra-institutional transfer between her account and the account of Ms. Eubanks. The Court also found Ms. Bonilla failed to state claims under TILA, the FCBA, and Regulation Z governing the disclosure of credit terms and protecting consumers against inaccurate and unfair credit billing and credit card practices based on fees or charges involved in credit transactions. It was concluded the Credit Union did not engage in a credit transaction; it reversed a deposit into a savings account upon determining fraud in the deposit transfer. The Credit Union did not charge a fee or interest, thus there is no disclosure violation. At the time of account(s) opening with American Heritage Federal Credit Union, Plaintiff was a victim of identity theft and AHFCU was made aware of that from Plaintiff.

**C. Conduct since dismissal of Bonilla I.**

14. Sometime in July 2019 the Philadelphia District Attorney's office told the Credit Union of its decision to dismiss the criminal charges against Ms. Bonilla.26 The Philadelphia District Attorney nolle prossed the charges on March 11, 2020.

15. Notwithstanding notice from the Philadelphia District Attorney's office in July 2019 it planned to dismiss charges against Ms. Bonilla and while the criminal case remained pending, "Defendants" continued to report to TransUnion, Experian, and Equifax from July 2019 through early April 2020 delinquencies in Ms. Bonilla's savings share account and credit card account in the amounts of $1,904 and $3,334. Not only did "Defendants" continue to report delinquencies to the credit reporting agencies, the Credit Union, as a "creditor," "took legal action to collect the

disputed amount, threatened [Ms. Bonilla's] credit rating, reported [her] accounts as delinquent, and restricted/closed [her] account while [she] disputed charges."

16. A "Defendant" then reported to Check Systems Inc. a charged off savings deposit account in the amount of $4,818.35 for July 2019 through early April 2020.30 Ms. Bonilla alleges this amount is incorrect and different from the amount reported to other credit reporting agencies. She asserts Ms. Basich, Mr. Foulke, and the Credit Union's reporting to Check Systems, Inc. of an incorrect amount is "libel defamation of character," negligent, malicious, and "Defendant is seeking unfair and unjust enrichment." It also violates FDCPA law. Ms. Bonilla also alleges someone took $600 of "secured money" and "there is no present right to security funds and/or interest on account or money received by [Credit Union] January 20th of 2016 from Plaintiff [sic]."

17. Ms. Bonilla disputed the Credit Union's reported delinquencies with all credit reporting agencies in May, July, September, October, and December 2019 and January and March 2020 and her credit reports regarding her accounts at the Credit Union read: "Account in dispute- reported by subscriber/Account information disputed by customer under the Fair Credit Reporting Act." Ms. Bonilla alleges "Defendant," in response to her disputed charges with the credit reporting agencies, reported back to the credit reporting agencies its accounting is accurate, and Ms. Bonilla's two accounts are fraudulent and delinquent as of December 2016 even though "Defendant" knew in July 2019 the District Attorney intended to drop charges against Ms. Bonilla.

18. The reported delinquencies in her accounts at the Credit Union only cleared up after she mailed a notarized letter to the credit reporting agencies and the Credit Union. An unidentified "Fraud Investigator" at the Credit Union confirmed receipt of her letter on April 2, 2020 and told her of the "remov[al] of her accounts from Check Systems and ... credit bureaus."35 The Credit Union continued to inaccurately report to credit reporting agencies for three more days (through April 5, 2020).36 "Defendants" failed to return monies to her in the amount taken from her

savings and credit card accounts despite learning in July 2019 the Philadelphia District Attorney intended to dismiss charges against her.

19. The charges against her having been nolle prossed, "Defendants" "offset" her loan without her authorization; continued to report to credit reporting agencies of a debt owed by Ms. Bonilla; continued to inaccurately report after July 2019; failed to thoroughly investigate the 2016 deposit before calling Philadelphia Police; withheld information from Philadelphia Police; closed her accounts and marked them fraudulent when the accounts were not fraudulent; failed to tell her of the Philadelphia Police Department's investigation; and used abusive tactics when acting as a debt collector.

20. Ms. Bonilla now claims, as a matter of law, the Credit Union, Mr. Foulke, Ms. Basich, and/or the unidentified branch manager individually and in their capacity as employees of the Credit Union, acted negligently as to their duty to her; had an obligation to thoroughly and timely investigate fraud but failed to do so; breached their duty of care to her; failed to properly train staff; intentionally inflicted emotional distress; negligently inflicted emotional distress; defamed, libeled, and put her in a false light; deprived her of her rights under the United States and Pennsylvania constitutions; and their conduct constitutes unfair, deceptive, or "abusive" practices.

21. Duty to Plaintiff by Defendants is as so in Plaintiff's signed at time of account opening "Membership And Account Agreement" stating by Defendant American Heritage Federal Credit Union under title Collection of Items, "We act as your agent and we are not responsible for handling items for deposit or collection beyond the exercise of ordinary care."

22. Contract to Plaintiff in Defendant's "Membership And Account Agreement" reads:

> Credit Union Liability " If we do not properly complete a transaction according to this Agreement, we will be liable for your losses or damages not to exceed the amount of the transaction, except as otherwise provided by law. We will not be liable if: (1) your account contains insufficient funds for the transaction; (2) circumstances beyond our control prevent the transaction; (3) your loss is caused by your or another financial institution's negligence; or (4) your account funds are subject to legal process or other claim. We will not be liable for consequential damages, except liability for *wrongful dishonor*. We exercise ordinary care if our actions or nonactions are consistent with applicable state law, Federal Reserve

7

regulations and operating letter, clearinghouse rules, and general financial institution practices followed in the area we serve. You grant us the right, in making payments of deposited funds, to rely exclusively on the form of the account and the terms of this Agreement. Any conflict regarding what you and our employees say or write will be resolved by reference in this Agreement."

23. Title 15 Chapter 5 § **512.  Standard of care and justifiable reliance.**

```
    (a)  Directors.--A director of a domestic corporation shall stand in a
fiduciary relation to the corporation and shall perform his duties as a
director, including his duties as a member of any committee of the board upon
which he may serve, in good faith, in a manner he reasonably believes to be
in the best interests of the corporation and with such care, including
reasonable inquiry, skill and diligence, as a person of ordinary prudence
would use under similar circumstances. In performing his duties, a director
shall be entitled to rely in good faith on information, opinions, reports or
statements, including financial statements and other financial data, in each
case prepared or presented by any of the following:
       (1)  One or more officers or employees of the corporation whom the
director reasonably believes to be reliable and competent in the matters
presented.
       (2)  Counsel, public accountants or other persons as to matters which the
director reasonably believes to be within the professional or expert
competence of such person.
       (3)  A committee of the board upon which he does not serve, duly
designated in accordance with law, as to matters within its designated
authority, which committee the director reasonably believes to merit
confidence.
§ 513.  Personal liability of directors.
    (a)  General rule. -If a bylaw adopted by the shareholders entitled to
vote or members entitled to vote of a domestic corporation so provides, a
director shall not be personally liable, as such, for monetary damages for
any action taken unless:
       (1)  the director has breached or failed to perform the duties of his
office under this subchapter; and
       (2)  the breach or failure to perform constitutes self-dealing, willful
misconduct or recklessness.
```

24. Ms. Bonilla alleges she suffered pain and suffering, mental distress and injury, humiliation, loss, financial hardship, confinement in prison causing her separation from her child, and inability to secure student loans and a mortgage.40 She seeks a declaration Defendants violated her federal constitutional rights and the laws of the United States; $5 million in "delay damages, attorney's fees, costs, interest, compensatory (including but not limited to aggravated damages), special damages including all expenses and financial losses incurred as a result of Defendant's actions"; $1 million in compensatory damages for emotional pain and suffering; $5 million in punitive damages; "[d]eclaratory relief declaring the acts and practices of Defendant and

contracts entered [sic] as to be set by this Honorable Court"; attorney's fees and costs; and any other relief awarded by the court.

25. Ms. Bonilla seeks relief under the Truth in Lending Act ("TILA") and Fair Credit Billing Act, 15 U.S.C. §§1601-1667 and its implementing Regulation Z, 12 C.F.R. §1026; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 and its implementing Regulation V, 12 C.F.R. part 1022; 15 U.S.C. §1692; the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693; the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 12 U.S.C. § 5531; and Regulation P, 12 C.F.R. part 1016 of the Gramm-Leach-Bliley Act. Ms. Bonilla seeks relief under Pennsylvania law for negligence, gross negligence, fraud and possibly other torts under Pennsylvania law.

## COUNT ONE

## FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)

26. Paragraphs 1-25 are hereby referenced and incorporated herein as if though full stated herein at full length.

27. Plaintiff claims Defendants deliberately furnished inaccurate information to credit reporting agencies from July 2019 onward in violation of 15 U.S.C. 1681s-2(b), which imposes a duty upon furnishers of information to consumer reporting agencies. Defendants were made fully aware of the truth of the actual accounts and statuses of the Plaintiff, but instead continually represented information pertaining to the Plaintiff inaccurately, thereby constituting a violation of the Fair Credit Reporting Act and its implementing Regulation V.

28. Defendant American Heritage Federal Credit Union has reported more than what is owed on savings share account to Check Systems Inc which violates section Fair Credit Reporting Act 621(a)(2) there is a "duty to correct and update information". July 2019- April of 2020 this information has been reported inaccurately.

29. Acts were deceptive, false and misleading representations of fact as of July 2019 until April 2020 that accounts were reported. Communication not only went to Plaintiff via response back

Case 2:20-cv-02276-MAK   Document 10   Filed 06/09/20   Page 10 of 20

that charges were "verified debt" but also to credit bureaus which in turn forwarded communication to Plaintiff and allowed it to remain reporting on Plaintiff's credit (credit reports).

30. "To state a claim under the FCRA against a furnisher of credit information, as opposed to the credit reporting agency itself," Ms. Bonilla must allege three elements: (1) "'[s]he filed a notice of dispute with a consumer reporting agency;'" (2) "'the consumer reporting agency notified the furnisher of information of the dispute'"; and, (3) "'the furnisher of information failed to investigate and modify the inaccurate information.'". Ms. Bonilla alleges she disputed with credit reporting agencies Check Systems, Inc., Experian, Equifax, and TransUnion "two accounts" she claims the Credit Union reported as "fraudulent and delinquent" since December 2016 to March 2020 (case open with C.R.A.s until April 2020).68. She alleges at some unidentified time, the disputed "accounts" at the Credit Union appeared on her credit report as "Account in dispute-reported by subscriber/Account information disputed by customer under the Fair Credit Reporting Act." Ms. Bonilla alleges the Credit Union continued to inaccurately report the status of the disputed savings and credit card account from July 2019 to March 2020 (case open with C.R.A.s until April 2020), when the criminal charges against her were nolle prossed and a Fraud Investigator from the Credit Union told her he would "remov[e] the accounts from Check Systems and would let the other department know to complete tasks of removing accounts with credit bureaus."

31. The correct information was reported to the Defendants in July 2019, but they made misrepresentations with regards to the Plaintiff all the way through March 2020 (case open with C.R.A.s until April 2020). The Plaintiff received a call from another employee of the organization, the Credit Union's Fraud Investigator, stating that they were going to make the change, thereby admitting the misrepresentation has been taking place from July 2019 to March 2020 (case open with C.R.A.s until April 2020). But they were advised of this as early as July 2019, and yet they continued to make misrepresentations with regards to the Plaintiff for 8

10

months through until March 2020. Although the (unidentified) Fraud Investigator has informed (April 2020) the Plaintiff that this will be removed from reporting in the future, this does not address the damages, humiliation, defamation, and substantial amount of emotional distress that the Plaintiff has incurred as a result of this representation that should have been addressed in July 2019 when the Plaintiff was told that the inaccuracy would be removed then and there. Therefore, the Defendants were informed of the inaccuracy and the dispute of its truthfulness in July 2019 and continued to misrepresent the truth for months afterwards, in violation of the FCRA.

**Joint and Several Liability**

32. DEFENDANT - American Heritage Federal Credit Union is responsible for this course of conduct as a whole.

33. DEFENDANT - Bruce Foulke is the administrator/director of this conduct and has allowed it to take place as it has against the Plaintiff.

34. DEFENDANT - Danielle Basich - is the Risk Compliance Officer who initiated this misrepresentation and inaccuracies against the Plaintiff.

35. DEFENDANT - A Third Individual - Branch Manager - unknown and unnamed at this moment. Is also responsible for the misrepresentation of the Plaintiff's debts and obligations as well as the wide variety of harms and damages that the Plaintiff has suffered directly resulting from the actions of this Defendant as it pertained to their position but was sufficiently reckless / grossly negligent and tantamount to fraud sufficient enough to qualify for individual liability.

**COUNT TWO**

**VIOLATION OF FAIR CREDIT BILLING ACT, TRUTH IN LENDING ACT - 15 U.S.C. § 1601-1667 and 1692**

36. Paragraphs 1-35 are hereby referenced and incorporated herein as if though full stated herein at full length.

37. Plaintiff alleges Defendants violated the Fair Credit Billing Act, Truth in Lending Act

and its implementing Regulation Z, and the Electronic Funds Transfer Act.

48. Ms. Bonilla alleges Defendants violated sections 1601 through 1667 of TILA76 and Regulation Z, 12 C.F.R. §1026. There are five parts to TILA, each with multiple sections, governing General Provisions, Credit Transactions, Credit Advertising and Limits on Credit Card Fees, Credit Billing, and Consumer Leases. Plaintiff avers the Defendants violated the provision pertaining to truthfulness in Credit Transactions - having represented that the Plaintiff was a debtor to the Defendant to various consumer reporting agencies when this was in fact not true and the Plaintiff was in fact not in owing to the Defendants of any debt. Whereas this Court in *Bonilla I* dismissed the initial August 2016 transactions as not having been related to credit, but instead been the reversal or a deposit, the Plaintiff avers that the representation of the Defendant of the Plaintiff's purported debt to other consumer credit agencies as a debt, that this misrepresentation falls within the scope of truthfulness in credit transactions as described in the FCBA and TILA.

39. Paragraphs 1-33 are hereby referenced and incorporated herein as if though full stated herein at full length.

40. Ms. Bonilla claims Defendants violated the Fair Credit Reporting Act and its implementing Regulation V. Regulation V, 12 C.F.R. part 1022, is the federal regulation implementing the FCRA. Regulation V "generally applies to persons that obtain and use information about consumers to determine the consumer's eligibility for products, services, or employment, share such information among affiliates, and furnish information to consumer reporting agencies."

41. Plaintiff claims Defendants deliberately furnished inaccurate information to credit reporting agencies from July 2019 onward in violation of 15 U.S.C. 1681s-2(b), which imposes a duty upon furnishers of information to consumer reporting agencies.

42. Defendants were made fully aware of the truth of the actual accounts and statuses of the Plaintiff, but instead continually represented information pertaining to the Plaintiff inaccurately,

thereby constituting a violation of the Fair Credit Reporting Act and its implementing Regulation V.

43. "To state a claim under the FCRA against a furnisher of credit information, as opposed to the credit reporting agency itself," Ms. Bonilla must allege three elements: (1) "'[s]he filed a notice of dispute with a consumer reporting agency;'" (2) "'the consumer reporting agency notified the furnisher of information of the dispute'"; and, (3) "'the furnisher of information failed to investigate and modify the inaccurate information.'". Ms. Bonilla alleges she disputed with credit reporting agencies Check Systems, Inc., Experian, Equifax, and TransUnion "two accounts" she claims the Credit Union reported as "fraudulent and delinquent" since December 2016 to March 2020 (case open with C.R.A.s until April 2020).68. She alleges at some unidentified time, the disputed "accounts" at the Credit Union appeared on her credit report as "Account in dispute-reported by subscriber/Account information disputed by customer under the Fair Credit Reporting Act." Ms. Bonilla alleges the Credit Union continued to inaccurately report the status of the disputed savings and credit card account from July 2019 to March 2020 (case open with C.R.A.s until April 2020), when the criminal charges against her were nolle prossed and a Fraud Investigator from the Credit Union told her he would "remov[e] the accounts from Check Systems and would let the other department know to complete tasks of removing accounts with credit bureaus."

44. The correct information was reported to the Defendants in July 2019, but they made misrepresentations with regards to the Plaintiff all the way through March 2020 (case open with C.R.A.s until April 2020). The Plaintiff received a call from another employee of the organization, the Credit Union's Fraud Investigator, stating that they were going to make the change, thereby admitting the misrepresentation has been taking place from July 2019 to March 2020(case open with C.R.A.s until April 2020). But they were advised of this as early as July 2019, and yet they continued to make misrepresentations with regards to the Plaintiff for 8 months through until March 2020. Although the (unidentified) Fraud Investigator has informed

(April 2020) the Plaintiff that this will be removed from reporting in the future, this does not address the damages, humiliation, defamation, and substantial amount of emotional distress that the Plaintiff has incurred as a result of this representation that should have been addressed in July 2019 when the Plaintiff was told that the inaccuracy would be removed then and there. Therefore, the Defendants were informed of the inaccuracy and the dispute of its truthfulness in July 2019 and continued to misrepresent the truth for months afterwards, in violation of the FCRA.

45. Under the TILA Part B, Defendant American Heritage Federal Credit Union failed to inform Plaintiff of change of credit card disclosure(s), term(s), agreement(s) and or charges/finance changes to secured credit card agreement upon retaining Plaintiff's secured funds of $600.00 and/or credit account. Transaction of holding secured credit card funds was not clear, and/or conspicuous to Plaintiff dates of July 2019 until (now) June of 2020. There is no update of credit terms and/or agreement as pertaining to Plaintiff and/or credit account. No agreement and/or authorization has been signed by Plaintiff. It is not clear as to how Defendant AHFU rescinded contract without payment of secured funds after dates of July 2019- June of 2020.

> Credit Transactions, requires a "creditor or lessor shall disclose to the person who is obligated on a consumer lease or a consumer credit transaction the information required under this subchapter."58 Information required to be disclosed by a creditor or lessor must be "clear[] and conspicuous[], in accordance with regulations of the [Bureau of Consumer Financial Protection]." Information such as "annual percentage rate" and "finance charge" must be disclosed, and, among other information, the creditor must disclose the obligor's right of rescission, the conditions under which a finance charge may be imposed, the method of determining the finance charge, and terms of credit secured by a consumer's principal dwelling.

46. As to Pennsylvania State Law Credit Union Code Title 15:

**(b) Notice of changes in fees, charges or policies.--**Each new member to a credit union shall be provided with notice by the respective credit union listing any fees, service charges or policies regarding the transfer of funds to noninterest bearing accounts. A new member and each existing member shall subsequently be provided with similar notice if there is a change by the credit union the amount or type of fees or service charges or a change in the policy regarding the transfer of funds to noninterest bearing accounts. The credit union shall also provide such information to any member upon request by that member.

**Joint and Several Liability**

47. DEFENDANT - American Heritage Federal Credit Union is responsible for this course of conduct as a whole.

48. DEFENDANT - Bruce Foulke is the administrator/director of this conduct and has allowed it to take place as it has against the Plaintiff.

49. DEFENDANT - Danielle Basich - is the Risk Compliance Officer who initiated this misrepresentation and inaccuracies against the Plaintiff.

50. DEFENDANT - A Third Individual - Branch Manager - unknown and unnamed at this moment. Is also responsible for the misrepresentation of the Plaintiff's debts and obligations as well as the wide variety of harms and damages that the Plaintiff has suffered directly resulting from the actions of this Defendant as it pertained to their position but was sufficiently reckless / grossly negligent and tantamount to fraud sufficient enough to qualify for individual liability.

## COUNT THREE

## FRAUD

51. Paragraphs 1-50 are hereby referenced and incorporated herein as if though full stated herein at full length.

52. Plaintiff avers the Defendants have engaged in the willful misrepresentation of the truth with regards to the instant matter, intentionally, for their benefit.

53. This matter arises out of a flaw and error within the system (electronic/ employee/ compliance) of the Defendant American Heritage Credit Union which was not able to authenticate the validity of the initial transaction resulting in funds being transferred from the account of Ms. Eubanks. Seeking to offset this loss, the organization recklessly and without evidence attributed the reason for this to be fraudulent conduct on the part of the Plaintiff without consideration of any other alternatives or possibilities, such as the orchestration of this transaction by an entity that was not the Plaintiff. The lack of evidence showing the Plaintiff's involvement with the transaction is what ultimately led to the dismissal of the criminal case with the Plaintiff. However, the Credit Union Organization, with the financial interests that come with

writing-off losses as due to fraud as opposed to its own internal flaws and errors, as well as potentially an interest in retaliation and retribution against the Plaintiff, continued to misrepresent information pertaining to the Plaintiff to others, namely consumer credit agencies, despite having been made aware of the untruthfulness of this information when they were informed that the case would be dropped and that the reports were inaccurate in July 2019. Nonetheless, the organization continues to misrepresent the truth with regards to the Plaintiff for several months after, to their gain, and to the substantial detriment of the Plaintiff.

54. Plaintiff avers the organization as a whole as well as each of its individual members are responsible for the misrepresentation of material fact, relied upon by others such as consumer agencies and insurance companies that compensate the bank for losses due to reported fraud, to their financial benefit and to the detriment of the Plaintiff, knowingly, willfully, intentionally, and having already been made aware of the truthfulness of the matter, in violation of Pennsylvania Law on Fraud and Fraudulent representation.

55. Upon Defendant AHFCU learning of investigation completing July of 2019, Defendant American Heritage Federal Credit Union held funds (not retuned as of June 2020) that were stated in a signed contract upon opening secured account in 2016 that funds are to be returned to Plaintiff at rescission of contract. It is to Plaintiff's understanding (as in contract) that secured funds are to be returned after account closure or rescission of contract. Defendant AHFCU's actions resulted in injury of Plaintiff not receiving her funds and being without them for savings purposes (and other injury according to Plaintiff's savings and livelihood [financial assets] sustained. Defendant's AHFCU held funds without interest and/or placing money into an interest-bearing account. Defendant American Heritage Federal Credit Union has held $600.00 in secured funds (secured with Plaintiff's cash) from dates July 2019- June of 2020.

55. Plaintiff is entitled to compensatory and punitive damages pursuant to Pennsylvania Law on Fraud. Actual Damages suffered are listed herein full complaint and have been physical, mental, emotional, economic and financial.

## COUNT FOUR

## NEGLIGENCE/ GROSS NEGLIGENCE

56. Paragraphs 1-55 are hereby referenced and incorporated herein as if though full stated herein at full length.

57. Defendants had responsibilities and obligations with regards to the Plaintiff as it pertained to their transactions with one another. Among the responsibilities and obligations are truthfulness and diligence, as well as accuracy, all of which were substantially breached to the substantial harm and damages of the Plaintiff.

58. Defendant's AHFCU and each officer/director/employee owes Plaintiff duty of care due to contract and by statue. Contracts include "Membership and Account Agreement", "Express Application" Signed February 8th 2016 *and* Secured Loan Agreement named "Security Agreement" dated February 8th of 2016. Plaintiff became a member of Defendant's Credit Union (AHFCU) and went into contractual agreement with each Defendant.

59. Defendants assumed duty of care at time Plaintiff signed contract to become a member of American Heritage Federal Credit Union, and also opened a Credit Card Account.

58. Defendants were admittedly made aware of the inaccuracy of their reporting in July 2019 and continued to misrepresent the truth with regards to the Plaintiff to other consumer credit agencies which substantially harmed the rights and interests of the Plaintiff.

59. Pennsylvania common law on gross negligence allows the Plaintiff to recover in a civil action in cases where the Defendant has been negligent / grossly negligent with regards to their duties and responsibilities to the Plaintiff, as has taken place in this case.

> Gross negligence is "recognized by Pennsylvania and federal courts interpreting Pennsylvania law as 'a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference.'"

60. Actual Damages suffered are listed herein full complaint and have been physical, mental, emotional, economic and financial.

61. Plaintiff is seeking compensatory and /or punitive damages with regards to each of the Defendants and their contributions to the grossly negligent conduct of the Defendants that has been described in detail in the previous sections and incorporated herein at length.

**Joint and Several Liability**

62. DEFENDANT - American Heritage Federal Credit Union is responsible for this course of conduct as a whole.

63. DEFENDANT - Bruce Foulke is the administrator/director of this conduct and has allowed it to take place as it has against the Plaintiff.

64. DEFENDANT - Danielle Basich - is the Risk Compliance Officer who initiated this misrepresentation and inaccuracies against the Plaintiff.

65. DEFENDANT - A Third Individual - Branch Manager - unknown and unnamed at this moment. Is also responsible for the misrepresentation of the Plaintiff's debts and obligations as well as the wide variety of harms and damages that the Plaintiff has suffered directly resulting from the actions of this Defendant as it pertained to their position but was sufficiently reckless / grossly negligent and tantamount to fraud sufficient enough to qualify for individual liability.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court enter judgment in their favor against the Defendant and award them relief due to paragraphs 1 - 68 but not limited to the following:

    a. Granting Plaintiff, a declaration that the acts and omissions described herein violate her rights under the United States Constitution and laws of the United States;

b. Granting Plaintiff actual damages, delay damages, attorney's fees, costs, interest, compensatory (including but not limited to aggravated damages), special damages including all expenses and financial losses incurred as a result of Defendant's actions $5,000,000.00;

c. Compensation for emotional pain and suffering in the amount of $1,000,000.00;

d. Plaintiff Seeks punitive damages in the amount of $5,000,000.00 from Defendant;

e. Declaratory relief declaring the acts and practices of Defendant and contracts entered as to be set by this Honorable Court;

f. Plaintiff seeks jury trial on all issues triable by jury;

g. Reasonable attorney's fees plus costs of this suit;

h. Any additional relief this court deems just, proper, and equitable on injuries Sustained.

Dated June 9th of 2020
Respectfully Submitted,

Mersadies Bonilla
Pro Se
921 Pleasant Valley Ave #307
Mount Laurel, New Jersey 08054
(267)742-9968 -Phone
Mersadies.bonilla@student.ctuonline.edu

## NOTICE OF PRESERVATION OF EVIDENCE

PLAINTIFF HEREBY DEMANDS AND REQUESTS THAT DEFENDANTS TAKE NECESSARY ACTION TO ENSURE THE PRESERVATION OF ALL DOCUMENTS, COMMUNICATIONS, WHETHER ELECTRONIC OR OTHERWISE, ITEMS AND THINGS IN THE POSSESSION OR CONTROL OF ANY PARTY TO THIS ACTION, OR ANY ENTITY OVER WHICH ANY PARTY TO THIS ACTION HAS CONTROL, OR FROM

WHOM ANY PARTY TO THIS ACTION HAS ACCESS TO, ANY DOCUMENTS, ITEMS, OR THINGS WHICH MAY IN ANY MANNER BE RELEVANT TO OR RELATE TO THE SUBJECT MATTER OF THE CAUSES OF ACTION AND/OR THE ALLEGATIONS OF THIS COMPLAINT.

Respectfully Submitted,

Mersadies Bonilla
June 9th of 2020

**VERIFICATION**

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief and, as to those, I believe them to be true. I certify under penalty pf perjury that the foregoing is true and correct.

Dated June 9th of 2020
Respectfully Submitted,

Mersadies Bonilla
Pro Se
921 Pleasant Valley Ave #307
Mount Laurel, New Jersey 08054
(267)742-9968 -Phone
Mersadies.bonilla@student.ctuonline.edu