**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MERSADIES BONILLA** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  20-2276** |
| | : | |
| **AMERICAN HERITAGE FEDERAL** | : | |
| **CREDIT UNION,** *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                                    **July 14, 2020**

We are again called to review Mersadies Bonilla's *pro se* claims against her credit union and its agents regarding its credit reporting of an August 2016 disputed deposit into her account. In her amended complaint, Ms. Bonilla alleges American Heritage Federal Credit Union, its Chief Executive Officer Bruce Foulke, Risk Compliance Officer Danielle Basich, and an unnamed branch manager violated the Fair Credit Reporting Act, the Fair Credit Billing Act/Truth in Lending Act, and engaged in fraud and negligence from July 2019 until early April 2020 by continuing to report an August 2016 disputed deposit which they knew to be false. Ms. Bonilla filed three *pro se* lawsuits challenging this conduct in two courts.  She is understandably frustrated as a person not trained in federal consumer law as to why she cannot simply recover for what she perceives as wrongful reporting of an obligation she did not owe until the reporting companies corrected her report in April 2020.  After parsing through several *pro se* allegations most of which are repeated from earlier dismissed complaints, we find Ms. Bonilla pleads a Fair Credit Reporting Act claim against the Credit Union but not against its individual agents.  After three attempts, she also does not state claims under the Fair Credit Billing Act, Truth in Lending Act, or under Pennsylvania law.  We will proceed into discovery on the reporting claim against the Credit Union.

I.      *Pro se* **alleged facts.**

Mersadies Bonilla has been challenging the reporting of a July 2016 transaction in her credit union account for almost four years without counsel.  She filed at least four lawsuits.  We earlier dismissed several *pro se* claims and consolidated her cases before us now.  She timely filed an amended complaint in this case hoping to bring all her claims at one time.[1]

### *July 2016 deposit in Ms. Bonilla's account leads to criminal charges.*

In July 2016, someone transferred $5,600 from the account of Credit Union shareholder Joyce Eubanks into Ms. Bonilla's account.[2] Believing the transfer fraudulent, the Credit Union "reversed" the payment back to Ms. Eubanks.[3] This transaction left Ms. Bonilla's account balance at negative $3,334.92, which the Credit Union began  reporting to credit reporting agencies as a charge-off to Ms. Bonilla's savings account.[4] Ms. Bonilla believed the Credit Union's unidentified branch manager, "acting outside their authority," contacted the Philadelphia Police Department to report fraud on the account.[5] A state court issued an arrest warrant for Ms. Bonilla in August 2016.[6] Ms. Bonilla denied wrongdoing.

The public docket reflects the Commonwealth brought criminal charges against Ms. Bonilla in the Philadelphia County Court of Common Pleas on August 19, 2016 relating to the money the Credit Union believed someone fraudulently deposited into her account.[7] The public docket shows the Commonwealth charged Ms. Bonilla with forgery; theft by unlawful taking–movable property; theft by deception–false impression; receiving stolen property; identity theft; criminal use of a communication facility; access to a device used to obtain or attempt to obtain property or services; and securing execution of documents by deception under Pennsylvania law.[8]

In July 2019, the Philadelphia District Attorney's office advised the Credit Union of its decision to dismiss the criminal charges against Ms. Bonilla.[9] Ms. Bonilla disputed the Credit

Union's reported delinquencies with all credit reporting agencies in May, July, September, October, and December 2019 and January and March 2020 and her credit reports regarding her accounts at the Credit Union read: "Account in dispute-reported by subscriber/Account information disputed by customer under the Fair Credit Reporting Act."[10]

For unexplained reasons, the Philadelphia District Attorney did not *nolle pros* the charges against Ms. Bonilla until March 11, 2020.[11]

### Ms. Bonilla sues both here and in state court alleging the Credit Union did not correct her credit reports when it knew the Commonwealth intended to dismiss the charges.

In late April 2019, Ms. Bonilla *pro se* sued the Credit Union, Mr. Foulke, Ms. Basich, and an unnamed branch manager in both state court and here.

In this Court, she alleged "Defendants" continued to report to TransUnion, Experian, and Equifax from July 2019 through early April 2020 delinquencies in her account although each knew from the Philadelphia District Attorney's office in July 2019 it planned to dismiss charges against Ms. Bonilla, and while the criminal case remained pending.[12] Ms. Bonilla alleged "Defendants" continued to report delinquencies to the credit reporting agencies and the Credit Union, as a "creditor," "took legal action to collect the disputed amount, threatened [Ms. Bonilla's] credit rating, reported [her] accounts as delinquent, and restricted/closed [her] account while [she] disputed charges."[13] She further alleged a "Defendant" then reported to Check Systems Inc. a charged off savings deposit account in the amount of $4,818.35 for July 2019 through early April 2020.[14] Ms. Bonilla alleged this charge-off amount is incorrect and different from the amount reported to other credit reporting agencies. She claimed Ms. Basich, Mr. Foulke, and the Credit Union's reporting to Check Systems, Inc. of an incorrect amount is "libel defamation of character," negligent, malicious, and "Defendant is seeking unfair and unjust enrichment."[15] Ms. Bonilla also alleged someone took $600 of "secured money" and "there is no present right to security funds

and/or interest on account or money received by [Credit Union] January 20th of 2016 from Plaintiff [sic]."[16]

Ms. Bonilla alleged a "Defendant," in response to her disputed charges with the credit reporting agencies, reported back to the credit reporting agencies its accounting is accurate, and Ms. Bonilla's two accounts are fraudulent and delinquent as of December 2016 even though a "Defendant" knew in July 2019 the District Attorney intended to drop charges against her.[17]

The reported delinquencies in her accounts at the Credit Union only cleared up after she mailed a notarized letter to the credit reporting agencies and the Credit Union.  An unidentified "Fraud Investigator" at the Credit Union confirmed receipt of her letter on April 2, 2020 and told her of the "remov[al] of her accounts from Check Systems and … credit bureaus."[18]  The Credit Union continued to inaccurately report to credit reporting agencies for three more days (through April 5, 2020).[19]  "Defendants" failed to return monies to her in the amount taken from her savings and credit card accounts despite learning in July 2019 the Philadelphia District Attorney intended to dismiss charges against her.[20]

The charges against her having been *nolle prossed*, Ms. Bonilla alleged "Defendants" "offset" her loan without her authorization; continued to report to credit reporting agencies of a debt owed by her; continued to inaccurately report after July 2019; failed to thoroughly investigate the 2016 deposit before calling the Philadelphia Police; withheld information from the Philadelphia Police; closed her accounts and marked them fraudulent when the accounts were not fraudulent; failed to tell her of the Philadelphia Police Department's investigation; and used abusive tactics when acting as a debt collector.[21]

We granted Ms. Bonilla's motion to proceed *in forma pauperis*, and, consistent with our screening obligation under 28 U.S.C. § 1915(e)(2)(B)(ii), dismissed Ms. Bonilla's claims under

the Dodd-Frank Act and Regulation P[22] with prejudice and dismissed without prejudice her claims under the Fair Debt Collection Practices Act ("FDCPA"),[23] Fair Credit Reporting Act ("FCRA"),[24] Truth in Lending Act ("TILA")[25] and Fair Credit Billing Act ("FCBA"),[26] the Electronic Funds Transfer Act ("EFTA"),[27] and state law claims.  We granted her leave to file an amended complaint if she wished to proceed with one or more of these claims.[28]

Ms. Bonilla filed an amended complaint alleging Defendants' conduct beginning in July 2019 violates the FCRA and implementing Regulation V,[29] the FDCPA, TILA and implementing Regulation Z,[30] and state law claims for fraud, "gross" negligence, and defamation.[31]  We screened her amended complaint under section 1915(e)(2)(B)(ii).

While we screened Ms. Bonilla's amended complaint filed here, we did not know she filed a complaint in the Philadelphia County Court of Common Pleas on April 23, 2020 against American Heritage Credit Union, Mr. Foulke, Ms. Basich, and an unnamed branch manager based on the same facts.  In her Philadelphia County action (which we refer to as *Bonilla III*), Ms. Bonilla alleged the same Defendants violated Pennsylvania statutes regulating credit unions and alleged common law claims of negligence; defamation; failure to properly train employees; "intentional or gross negligence"; intentional infliction of emotional distress; negligent infliction of emotional distress; fraud; unfair and deceptive trade practices; violation of TILA; and alleged Defendants' conduct prevented her from exercising her federal and state constitutional rights.  Defendants removed the action on May 13, 2020 (No. 20-2276),[32] and moved to dismiss the complaint.[33]

On May 19, 2020, we issued our screening memorandum in support of dismissing the amended complaint in *Bonilla II* finding Ms. Bonilla failed to state a claim under the under the Fair Debt Collection Practices Act;  Part B of TILA; and Pennsylvania state law claims for fraud,

"gross" negligence, and defamation.[34] We found Ms. Bonilla stated a claim in *Bonilla II* against the Credit Union only under the Fair Credit Reporting Act for furnisher liability.[35]

Faced with two pending actions brought by Ms. Bonilla against the same defendants based on the same facts—*Bonilla II* and *Bonilla III*—we deferred dismissal of *Bonilla II* and ordered Ms. Bonilla to show cause why we should not consolidate *Bonilla II*, No. 20-2053, with *Bonilla III*, No. 20-2276.[36] Ms. Bonilla did not oppose consolidation of her cases.[37]

## II.    Analysis

Ms. Bonilla filed an amended complaint on June 9, 2020 against the Credit Union and Mr. Foulke, Ms. Basich, and the unnamed branch manager in their individual capacities.[38]  She repeats her claims of furnisher liability under the Fair Credit Reporting Act, violations of the Fair Credit Billing Act and TILA, 15 U.S.C. §§ 1601-1667 and 1692, and state law claims of fraud and "negligence/gross negligence" with regard to three transactions: (1) a savings share account and one credit account in the amounts of $1,904 and $3,334 Defendants reported to TransUnion, Experian, and Equifax as delinquent from July 2019 to early April 2020; (2) a reported $4,818.35 to "Check Systems, Inc." as a charge-off on Ms. Bonilla's savings account beginning July 2019; and (3) "Amount of $600.00 of secured money (property Account number 622661) taken and there is no present right to security funds and/or interest on account or money received by AHFCU January 20th of 2016 from Plaintiff."[39]

Ms. Bonilla alleges the Credit Union continued to report delinquencies in Ms. Bonilla's account to TransUnion, Experian and Equifax from July 2019 through April 2020.[40]  Ms. Bonilla alleges she "disputed the Credit Union's reported delinquencies with all credit reporting agencies in May, July, September, October, and December 2019 and January and March 2020."[41]  After the Commonwealth *noelle prossed* the criminal charges against her, Ms. Bonilla alleges she sent a

letter to the Credit Union informing them of the *noelle prossed* charges.[42] In early April, an unidentified Fraud Investigator at the Credit Union acknowledged he received Ms. Bonilla's letter and informed her the Credit Union would remove reporting of her account.[43] The Credit Union stopped reporting negative balances in early April 2020.[44]

Ms. Bonilla alleges the Defendants continued to report her account balance incorrectly until April 2020, despite receiving information from the District Attorney in July 2019.[45] She alleges the Defendants "offset" her loan without her authorization, failed to investigate the August 2016 deposit before contacting the Philadelphia police, and mishandled the fraud investigation.[46]

We dismissed most of these claims in earlier Orders supported by extensive memoranda. But Ms. Bonilla brings them again. Defendants argue we should dismiss all claims: (1) under Rule 12(e) or require Ms. Bonilla to file a more definite statement; and (2) for failure to plausibly state a claim under Rule 12(b)(6).[47] We deny the motion for a more definite statement and to dismiss the Fair Credit Reporting Act claim against the Credit Union; we grant the motion to dismiss the remaining claims.

### A.   Defendants' motion for more definite statement under Rule 12(e) is denied as moot.

Defendants object to Ms. Bonilla's "stand-alone references" to an extensive list of possible causes of action as failing to satisfy Rule 8(a) and making it impossible to prepare a defense. Defendants object to possible claims for intentional infliction of emotional distress; negligent infliction of emotional distress; defamation; libel; unfair, deceptive, or "abusive" practices; unspecified federal constitutional rights; unspecified laws of the United States; the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693; the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 12 U.S.C. § 5531; Regulation P, 12 C.F.R. part 1016 of the Gramm-Leach-Bliley Act; and possibly other torts.[48]

Federal Rule of Civil Procedure 8(a) provides: "A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief."[49]

As our Court of Appeals recently explained, "[t]he purpose of this rule is to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"[50] We are directed "dismissal for violating Rule 8 is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'"[51]

Federal Rule of Civil Procedure 12(e) allows a defendant to move for a more definite statement providing, in part: "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."[52] "Federal Rule of Civil Procedure 12(e) often serves as a corollary to pleading standards under Rule 8(a)."[53] A motion for a more definite statement under Rule 12(e) "is not a substitute for the discovery process[,]" and such motions are disfavored.[54] We grant a Rule 12(e) motion "where the pleadings are 'unintelligible or if it is virtually impossible for the opposing party to craft a responsive pleading'" and the defendant is "unable to respond 'even with a simple denial[] in good faith or without prejudice to [itself].'"[55]

The problem is Ms. Bonilla took our May 7, 2020 memorandum dismissing her complaint in *Bonilla II* and turned it into her amended complaint. We explained in our memorandum the amended complaint failed to state a claim under the Fair Debt Collection Practices Act, Part B of TILA and Regulation Z, and Pennsylvania common law claims for fraud, "gross" negligence, and

defamation.[56] After screening two complaints, we dismissed all but her Fair Credit Reporting Act claim.

We allowed Ms. Bonilla to amend her complaint yet again.  In the amended complaint now before us, Ms. Bonilla again repeats our May 7, 2020 memorandum in *Bonilla II* summarizing our perception of the claims in *Bonilla II.*  But we already dismissed all but the Fair Credit Reporting Act claim. We already dismissed with prejudice claims under Dodd-Frank and Regulation P, so there is no need for a more definite statement. We dismissed the other claims in the extensive list identified by Defendants without prejudice and, although we gave Ms. Bonilla leave to amend to state claims if she could consistent with two of our screening memorandums and the Federal Rules of Civil Procedure, she did not do so.  We do not read Ms. Bonilla's current amended complaint to include a claim in the extensive list identified by Defendants. We read the operative complaint, now the third one before us, challenging 2019 conduct and alleging  claims under (1) the Fair Credit Reporting Act; (2) the Fair Credit Billing Act and TILA; (3) common law fraud; and (4) common law "negligence/gross negligence."

We recognize the amended complaint seeks relief including a "declaration that the acts and omissions described herein violate her rights under the United States Constitution and laws of the United States."[57]  We need not direct a more definite statement under Rule 12(e) because Ms. Bonilla does not articulate a constitutional right or identify a state actor liable for any such violation. We decline to grant Ms. Bonilla a fourth opportunity to cure the defects in her pleading.

Having already dismissed the claims for which Defendants seek a more definite statement, we deny their motion for a more definite statement as moot.

**B.      We dismiss all claims except for the Fair Credit Reporting Act claim.**

Defendants alternatively move to dismiss arguing Ms. Bonilla fails to state claims: (1) against individual defendants Mr. Foulke, Ms. Basich, and the unnamed branch manager; (2) under the Fair Credit Reporting Act; (3) under the Fair Credit Billing Act, Truth in Lending Act and its implementing regulation Z, and the Electronic Funds Transfer Act; (4) for fraud; (5) for negligence; and (6) for punitive damages.[58]    Ms. Bonilla did not respond to Defendants' arguments.  After independently reviewing her allegations, we agree with Defendants on all but Ms. Bonilla's Fair Credit Reporting Act claim against the Credit Union.  All other claims are dismissed.

**1.      We dismiss all claims against the individual defendants.**

Defendants first argue Mr. Foulke, Ms. Basich, and the unnamed branch manager are sued in their positions as officers and agents of the Credit Union and, under Pennsylvania law, can only be held liable for their own tortious actions where the officer actively participated in the alleged misfeasance. Defendants argue Ms. Bonilla does not allege a fact regarding the individual's conduct or their active, knowing participation in the alleged malfeasance.

We need not decide this issue because, as discussed below, we are dismissing all of Ms. Bonilla's state law claims and her claims under the Fair Credit Billing Act, TILA, and EFTA. Although we will allow the claim under the Fair Credit Reporting Act to proceed, Ms. Bonilla fails to allege an action taken by the individual defendants as "furnishers" under section 1681s-2(b) of the Act.   We dismiss all claims against the individual defendants.

**2.      Ms. Bonilla states a claim for furnisher liability under the Fair Credit Reporting Act against the Credit Union.**

Ms. Bonilla repleads her Fair Credit Reporting Act for furnisher liability against Defendants based on her allegation the Credit Union knew, in July 2019, the District Attorney

planned to *nolle pros* charges relating to the August 2016 transaction. Ms. Bonilla alleges Defendants deliberately furnished inaccurate information to credit reporting agencies beginning in July 2019 despite knowing the District Attorney planned to discontinue the criminal action against Ms. Bonilla; the Credit Union reported more than what is owed on her savings share account to Check Systems Inc.; and Defendants continued to inaccurately furnish information to credit reporting agencies through March 2020.[59]

Defendants move to dismiss arguing the District Attorney's decision to *nolle pros* the criminal charges relating to the August 2016 disputed transaction "has no factual or legal relevance to the accuracy of the reporting of [Ms. Bonilla's] overdrawn accounts" and the District Attorney's decision to *nolle pros* criminal charges "is not determinative of the merits of the underlying criminal case or the innocence of the criminal defendant and would be inadmissible as evidence." Defendants argue even if the District Attorney told Defendants in July 2019 it intended to *nolle pros* charges against Ms. Bonilla "that information would not establish that the continued reporting of [her] overdrawn accounts was inaccurate" and her "reliance on the District Attorney's decision to *nolle pros* her criminal case does not provide evidence to support a prima facie case against Defendants on any claim made in this case."[60]

We reject Defendants' argument. We are not concerned with the legal effect of *nolle prossed* charges in a criminal case or evidentiary issues; we are concerned with Defendants' knowledge in July 2019 and whether it failed to investigate and modify allegedly inaccurate information regarding the August 2016 transaction.

"To state claim under the FCRA against a furnisher of credit information, as opposed to the credit reporting agency itself,"  Ms. Bonilla must allege three elements: (1) she filed a notice of dispute with a consumer reporting agency; (2) the consumer reporting agency notified the

furnisher of information of the dispute; and, (3) the furnisher of information failed to investigate and modify the inaccurate information.

Section 1681s-2(b) describes the "[d]uties of furnishers of information upon notice of dispute":

(1) In general

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, *the person* shall—

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i) modify that item of information;
(ii) delete that item of information; or
(iii) permanently block the reporting of that item of information.[61]

The term "person" is defined by the Act as "*any individual*, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity."[62]

Ms. Bonilla alleges she disputed the Credit Union's reported delinquencies with all credit reporting agencies in May, July, September, October, and December 2019 and January and March 2020 and her credit reports regarding her accounts at the Credit Union read: "Account in dispute

reported by subscriber/Account information disputed by customer under the Fair Credit Reporting Act." Ms. Bonilla alleges "Defendant," in response to her disputed charges with the credit reporting agencies, reported back to the credit reporting agencies its accounting is accurate, and Ms. Bonilla's two accounts are fraudulent and delinquent as of December 2016 even though "Defendant" knew in July 2019 the District Attorney intended to drop charges against Ms. Bonilla.[63]

Accepting as true the factual allegations of her amended complaint and liberally construing those facts in the light most favorable to *pro se* Ms. Bonilla, her amended complaint states a claim to relief under the Fair Credit Reporting Act for furnisher liability at least as against the Credit Union.

While she may proceed against the Credit Union, there are no facts supporting the individual Defendants' conduct under section 1681s-2(b) of the Fair Credit Reporting Act.  Ms. Bonilla alleges Mr. Foulke, as "the administrator/director of this conduct and has allowed it to take place as it has against the Plaintiff"; as to Ms. Basich, as the "Risk Compliance Officer who initiated this misrepresentation and inaccuracies against the Plaintiff"; and the unnamed branch manager who is "also responsible for the misrepresentation of the Plaintiff's debts and obligations as well as the wide variety of harms and damages that the Plaintiff has suffered directly resulting from the actions of this Defendant as it pertained to their position but was sufficiently reckless/grossly negligent and tantamount to fraud sufficient enough to qualify for individual liability."[64]

Ms. Bonilla pleads no facts to supplement these general allegations of wrongdoing.  To survive dismissal, Ms. Bonilla must allege sufficient facts, accepted as true, to state a claim plausible on its face allowing us to draw a reasonable inference these individual Defendants are

liable for an alleged violation of furnisher liability under the Fair Credit Reporting Act.  Ms. Bonilla fails to meet this mark; she pleads no facts of the individual liability as a furnisher.

We dismiss Ms. Bonilla's Fair Credit Reporting Act claims against the individual Defendants without prejudice, but she may proceed against the Credit Union.

### 3.    Ms. Bonilla fails to state a claim under the Fair Credit Billing Act, Truth in Lending Act, and Electronic Funds Transfer Act.

Defendants move to dismiss claims under the Fair Credit Billing Act, TILA, and EFTA. Ms. Bonilla does not plausibly state a claim under TILA, its implementing Regulation Z, or the Fair Credit Billing Act for conduct since July 2019.  She did not amend her allegations from her previously screened, and dismissed, claims under these federal statutes.  We grant Defendants' motion to dismiss claims under the Fair Credit Billing Act, Regulation Z, and TILA for our earlier reasons.

Defendants move to dismiss the EFTA claims.  We earlier dismissed Ms. Bonilla's EFTA claims explaining we found the Credit Union did not offer an overdraft service governed by EFTA and, instead, reversed an intra-institutional transfer between two credit union accounts when it suspected fraud in connection with the transfer.[65]   Screening her earlier EFTA claims, we examined Ms. Bonilla's allegation of a transfer between her account and the account of Ms. Eubanks which she alleged is an "electronic transfer." We then dismissed Ms. Bonilla's EFTA claim to the extent the factual basis is the August 2016 reversal of the disputed amount deposited in her account from the account of Ms. Eubanks.[66]  We explained the intra-institutional transfer is not within the scope of EFTA.

Ms. Bonilla refers to EFTA in several paragraphs but does not specifically plead an EFTA violation.[67]   To the extent she intended to allege an EFTA claim, she fails to allege facts to

plausibly state a claim as to each Defendant separately.  She did not cure the defects in her pleading as we explained in our earlier screening memorandum.  We dismiss Ms. Bonilla's EFTA claims.

### 4.    Ms. Bonilla fails to state a claim for common law fraud.

Defendants move to dismiss Ms. Bonilla's fraud claim arguing she fails to allege (1) Defendants knowingly made a material misrepresentation; and (2) she justifiably relied on the Credit Union's misrepresentations causing harm to her as a result of her reliance.

In our screening of the amended complaint in *Bonilla II*, we explained Ms. Bonilla must allege  "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.[68]  We also explained allegations of state common law fraud must comply with Federal Rule of Civil Procedure 9(b) and be pleaded with particularity.  To satisfy Rule 9(b), a complaint "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise conduct with which [it is] charged."[69]  Rule 9(b)'s particularity requirement is met  "by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud'" and "also must allege who made a misrepresentation to whom and the general content of the misrepresentation."[70]

Screening her amended complaint in *Bonilla II*, we explained Ms. Bonilla failed to allege a misrepresentation made by the Credit Union to her intending to mislead her into justifiably relying on the misrepresentation resulting in injury to her proximately caused by the reliance.[71] She alleged the Credit Union, by falsely reporting to credit reporting agencies a negative balance on her savings account (as a result of the reversal in the August 2016 transaction) even after July

2019, made a misrepresentation to the credit reporting agencies which those agencies relied on causing harm to her. We found she failed to allege she justifiably relied on the Credit Union's misrepresentations causing harm to her as a result of her reliance. We granted her leave to amend.

Ms. Bonilla makes the same allegations of fraud adding only one paragraph alleging: when the Credit Union learned of the District Attorney's decision in July 2019, it continued to "h[o]ld funds (not returned as of June 2020) that were stated in a signed contract upon opening secured account in 2016 that funds are to be returned to Plaintiff at rescission of contract."[72] Ms. Bonilla alleges injury resulting from the Credit Union's continued "holding" of $600 in "secured funds" without interest.[73] These allegations suffer from the same deficiencies as the amended complaint in *Bonilla II*; the amended complaint here fails to allege a misrepresentation and justifiable reliance and fails to meet the particularity standards of Rule 9. It appears Ms. Bonilla's fraud claim is based on an alleged contractual obligation of the Credit Union to return "funds" to her at rescission of contract. Under Pennsylvania law, non-performance of a contract generally does not constitute fraud but "it is possible that a breach of contract also gives rise to an actionable tort … if … the wrong ascribed to defendant [is] the gist of the action, the contract being collateral."[74]

Ms. Bonilla does not plead fraud. She claims the Credit Union breached a contract in failing to return funds and she is entitled to her money. This may be another claim, but she does not plead fraud. We must dismiss her fraud claim.

### 5. Ms. Bonilla fails to state a claim for common law "negligence/gross negligence."

Ms. Bonilla alleges the Credit Union and "each officer/director/employee" owes her a duty of care under contract and by statute.[75] She identifies the contracts as a "Membership and Account Agreement," an "Express Application" signed on February 6, 2016, and a "Secured Loan Agreement named 'Security Agreement'" dated February 8, 2016.[76] Ms. Bonilla alleges she "went

into contractual agreement with each Defendant" and Defendants "assumed a duty of care" to her at the time she signed contracts to become a member of the Credit Union. Ms. Bonilla does not identify a "statute" creating a duty owed by Defendants to her.

Defendants move to dismiss Ms. Bonilla's claim for "negligence/gross negligence" arguing she fails to: (1) identify the duties allegedly owed to her by Defendants under "contract and by statute"; and, (2) how Defendants breach the duties. Defendants also argue there is no separate cause of action under Pennsylvania law for "gross negligence."

In our screening memorandum in *Bonilla II*, we dismissed Ms. Bonilla's claim for "gross negligence" explaining it is not a separate action under Pennsylvania law; rather it is a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference.[77]  Having already dismissed Ms. Bonilla's claim for "gross negligence," her claim again alleged here is dismissed.

As for her claim of negligence, we explained she must plead: (1) Defendants owed her a duty of case; (2) Defendants breached that duty; (3) the breach resulted in injury to her; and (4) she suffered an actual loss or damage.[78]  We read Ms. Bonilla's amended complaint as alleging the Defendants owed her a duty of care created by three contracts executed in February 2016: a "Membership and Account Agreement"; "Express Application"; and "Secured Loan Agreement named 'Security Agreement.'" But she still does not allege how the contract imposed a duty and what the duty is.  We infer from Ms. Bonilla's allegation Defendants breached some unidentified duty regarding the inaccuracy of their reporting, which Defendants learned in July 2019, to credit reporting agencies.  If we assume this is the duty Ms. Bonilla believes Defendants breached, she does not allege where such a duty arose.  Again, she may be pleading a claim in contract but not in tort.

We dismiss her claim for negligence.

### 6.    We dismiss Ms. Bonilla's punitive damages claim.

Defendants move to dismiss Ms. Bonilla's claim for punitive damages arguing there are no allegations they acted with bad motive or "reckless indifference to the rights of others."

Under Pennsylvania law, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."[79] "Although ordinary negligence will not support an award of punitive damages, 'punitive damages are appropriate for torts sounding in negligence when the conduct goes beyond mere negligence and into the realm of behavior which is willful, malicious, or so careless as to indicate wanton disregard for the rights of the parties injured.'"[80]

Ms. Bonilla fails to allege willful, malicious, or conduct indicating  "wanton disregard" of her rights.  But even if she sufficiently pleaded a claim for punitive damages, no claims remain on which to base such an award.  We dismiss Ms. Bonilla's claims for punitive damages.

## III.    Conclusion

After three attempts at pleading statutory and tort claims, we dismiss all of Ms. Bonilla's claims in the amended complaint except for her Fair Credit Reporting Act claim against the Credit Union.

---

[1] In August 2018, Ms. Bonilla sued the Credit Union for its conduct in the August 2016 transaction alleging violations of the Electronic Funds Transfer Act ("EFTA"), its implementing Regulation E, the Truth in Lending Act, ("TILA") and the Fair Credit Billing Act ("FCBA") and its implementing Regulation Z.  *Bonilla v. American Heritage Federal Credit Union*, No. 18-3293 ("*Bonilla I*"); 15 U.S.C. § 1693, *et seq.*; 12 C.F.R. § 205.17; 15 U.S.C. § 1601, *et seq.*; 15 U.S.C. §§ 1666-1666j; 12 C.F.R. pt. 1026.  On April 4, 2019, we granted the Credit Union's motion for judgment on the pleadings.  *Bonilla I*, 2019 WL 1506012 (E.D. Pa. Apr. 4, 2019).  We found EFTA and Regulation E did not apply to Ms. Bonilla's challenge to the Credit Union's intra-institutional transfer between her account and the account of Ms. Eubanks.  *Id.* at *3-*4.  We also found Ms. Bonilla failed to state claims under TILA, the FCBA, and Regulation Z governing the disclosure

of credit terms and protecting consumers against inaccurate and unfair credit billing and credit card practices based on fees or charges involved in credit transactions. *Id.* at *4. We concluded the Credit Union did not engage in a credit transaction; it reversed a deposit into a savings account upon determining fraud in the deposit transfer, and there is no disclosure violation. We closed this first case on April 4, 2019. *Bonilla I*, No. 18-3293 at ECF Doc. No. 57.

[2] ECF Doc. No. 10 at ¶ 10.

[3] *Id.* at ¶ 12.

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* at ¶ 11. *See* criminal docket report CP-51-CR-0000237-2018 (Phila. Court of Common Pleas).

[8] *Id.*

[9] ECF Doc. No. 10 at ¶ 14.

[10] *Id.*

[11] The criminal docket report confirms the Commonwealth *nolle prossed* the criminal case on March 11, 2020. *See* criminal docket report CP-51-CR-0000237-2018 (Phila. Court of Common Pleas).

[12] No. 20-2053 at ECF Doc. No. 10 at ¶ 15. We refer to this case as *Bonilla II*.

[13] *Id.* at ¶ 16.

[14] *Id.*

[15] *Id.*

[16] *Id.* at ¶ 17.

[17] *Id.*

[18] *Id.* at ¶ 18.

[19] *Id.*

[20] *Id.* at ¶ 16.

---

[21] *Id.* at ¶¶ 17-20.

[22] Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 12 U.S.C. § 5531; and Regulation P, 12 C.F.R. part 1016 of the Gramm-Leach-Bliley Act.

[23] 15 U.S.C. § 1692.

[24] 15 U.S.C. § 1681; 12 C.F.R. part 1022.

[25] 15 U.S.C. § 1601, *et seq.*

[26] 15 U.S.C. §§ 1666-1666j.

[27] 15 U.S.C. § 1693, *et seq.*

[28] *Bonilla II,* No. 20-2053 at ECF Doc. Nos. 4. 8. 9.

[29] 15 U.S.C. § 1681; 12 C.F.R. part 1022.

[30] 15 U.S.C. §§ 1601-1667; 12 C.F.R. § 1026.

[31] In *Bonilla II*, Ms. Bonilla dropped claims under EFTA, 15 U.S.C. § 1693, *et seq.*, Dodd-Frank, 12 U.S.C. § 5531, and Regulation P, 12 C.F.R. part 1016.

[32] ECF Doc. No. 1. We refer to this removed case as *Bonilla III*.

[33] ECF Doc. No. 5.

[34] *Bonilla II*, No. 20-2053 at ECF Doc. Nos. 11, 12.

[35] *Bonilla II* at ECF Doc. No. 11.

[36] *Bonilla II* at ECF Doc. Nos. 11, 12.

[37] *Bonilla II* at ECF Doc. No. 13.

[38] ECF Doc. No. 10.

[39] ECF Doc. No. 10 at ¶ 9.

[40] *Id.* at ¶ 9.

[41] *Id.* at ¶ 17.

[42] *Id.* at ¶ 19.

---

[43] *Id.*

[44] *Id.* at ¶ 16.

[45] *Id.* at ¶ 19.

[46] *Id.* at ¶ 19.

[47] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[48] ECF Doc. No. 13-1 at 6.

[49] Fed.R.Civ.P. 8(a).

[50] *Peay v. Sager*, No. 19-1131, 2020 WL 362774, at *2 (3d Cir. Jan. 22, 2020) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[51] *Id.* (quoting *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004)) (footnote omitted).

[52] Fed.R.Civ.P. 12(e).

[53] *Carson v. Tucker*, 20-399, 2020 WL 1953655, at *3 (E.D. Pa. Apr. 24, 2020).

[54] *Id.* (quoting *Wheeler v. United States Postal Serv.*, 120 F.R.D. 487, 488 (M.D. Pa. 1987)).

[55] *Id.* (citations omitted).

[56] *Bonilla II* at ECF Doc. No. 11, 12.

[57] ECF Doc. No. 10 at Prayer for Relief.

[58] ECF Doc. No. 13.

[59] ECF Doc. No. ECF Doc. No. 10 at ¶¶ 27-31.

[60] ECF Doc. No. 13.

[61] 15 U.S.C. § 1681s-2(b) (emphasis added).

[62] 15 U.S.C. § 1681a(b) (emphasis added).

[63] ECF Doc. No. 10 at ¶ 17.

[64] ECF Doc. No. 10 at ¶¶ 33-35.

[65] *Bonilla I*, 2019 WL 1506012, at *4.

[66] *Bonilla II*, 2019 WL 1506012, at *4.

[67] *See* ECF Doc. No. 10 at ¶¶ 13, 25.

[68] *Richards v. Ameriprise Financial, Inc.*, 152 A.3d 1027, 1035 (Pa. Super. Ct. 2016) (citing *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)).

[69] *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004).

[70] *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004).

[71] *Bonilla II*, ECF Doc. No. 11 at 14.

[72] ECF Doc. No. 10 at ¶ 55.

[73] *Id.*

[74] *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002) (quoting *Bash v. Bell Tel. Co.*, 601 A.2d 825, 829 (Pa. Super. Ct. 1992)).

[75] ECF Doc. No. 10 at ¶ 58.

[76] *Id.*

[77] *Bonilla II*, ECF Doc. No. 11 at 15.

[78] *Id.* (citing *Martin v. Evans*, 711 A.2d 458, 461(Pa. 1998)).

[79] *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770-71 (Pa. 2005) (quoting *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984)).

[80] *Welch v. Nationstar Mortgage, LLC*, No. 19-2023, 2020 WL 470305, at *5 (E.D. Pa. Jan. 29, 2020) (quoting *Hutchinson*, 870 A.3d at 770).