**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MERSADIES BONILLA** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  20-2276** |
| | : | |
| **AMERICAN HERITAGE FEDERAL** | : | |
| **CREDIT UNION** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                      **February 22, 2021**

Mersadies Bonilla pro se claims her credit union, American Heritage Federal Credit Union, violated the Fair Credit Reporting Act by deliberately furnishing inaccurate information to credit reporting agencies regarding a criminal fraud charge pending against her in state court until March 11, 2020 when the state court judge granted the Commonwealth's oral *nolle pros* motion during a pretrial status conference. She immediately demanded the credit reporting agencies remove the reference. A credit reporting agency requested the Credit Union reinvestigate. The Credit Union promptly investigated and confirmed no further fraud charges. But Ms. Bonilla believes the Credit Union should have directed removal of the fraud reference back in July 2019 when an assistant district attorney allegedly emailed a motion for *nolle pros* to the state court judge off the record. The state court judge never ruled on this alleged off-the-record motion. Ms. Bonilla also claims a supervisor in the District Attorney's Office called her in July 2019 (even though Ms. Bonilla retained criminal counsel) and told her of the expected *nolle pros*. Even if we could credit this story absent evidence, there is no evidence a judge ever entered a *nolle pros* until March 11, 2020. There is also no evidence the Credit Union knew of this unique dismissal in July 2019. And Congress does not require the credit union call around to

prosecutors to see if the public docket is wrong and the case is dismissed. We grant the Credit Union's motion for summary judgment and deny Ms. Bonilla's cross-motion.

## I.   Undisputed Facts[1]

An unknown shareholder at American Heritage Federal Credit Union deposited money into Ms. Bonilla's American Heritage Credit Union account in August 2016.[2] Believing the transfer fraudulent, the Credit Union "reversed" the payment back to the other person leaving Ms. Bonilla with a negative account balance.[3] In January 2017, the Credit Union began furnishing to credit reporting agencies a charge-off on Ms. Bonilla's overdrawn account.[4]

In addition to reversing the transaction leaving Ms. Bonilla's account overdrawn, the Credit Union contacted the Philadelphia Police Department to report suspected fraud by Ms. Bonilla.[5] On November 11, 2016, the Philadelphia Police Department issued an Affidavit of Probable Cause to arrest Ms. Bonilla for fraud and other charges relating to the August 2016 transactions.[6] After a January 11, 2018 preliminary hearing, the Philadelphia County Court of Common Pleas found sufficient evidence to direct a trial be held on the charges.[7]

The Credit Union continued furnishing to credit reporting agencies the charged-off amount on Ms. Bonilla's overdrawn account. In August 2018, Ms. Bonilla filed the first of her actions against the Credit Union alleging violations of a host of federal consumer protection statutes and banking regulations for its actions.[8] We granted the Credit Union's motion for judgment on the pleadings and dismissed Ms. Bonilla's case with prejudice.[9]

In April 2020, Ms. Bonilla filed two new complaints against the Credit Union.[10] In these actions, later consolidated before us, Ms. Bonilla alleged from July 2019 through early April 2020 the Credit Union deliberately furnished to credit reporting agencies a charge-off of her overdrawn account despite knowing in July 2019 the Philadelphia District Attorney's office

planned to dismiss fraud charges against her. Ms. Bonilla alleged the Credit Union's conduct in continuing to furnish inaccurate information regarding her account to credit reporting agencies violated, among other federal statutes, the furnisher liability provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

The Credit Union moved to dismiss Ms. Bonilla's consolidated complaints in June 2020. By that time, the District Attorney had *nolle prossed* the criminal fraud charges against Ms. Bonilla at a March 11, 2020 status conference in the Philadelphia County Court of Common Pleas.[11]  But faced at the motion to dismiss stage with Ms. Bonilla's allegation the Credit Union knew in July 2019 of the District Attorney's intention to *nolle pros* charges—eight months before the March 11, 2020 status conference—we denied the Credit Union's motion to dismiss Ms. Bonilla's furnisher liability claim against it under the Fair Credit Reporting Act.

As we explained in our July 14, 2020 memorandum addressing the Credit Union's motion to dismiss, our concern centered on the Credit Union's knowledge in July 2019 and whether it failed to investigate and modify allegedly inaccurate information regarding the August 2016 transactions.[12] This single issue survived the Credit Union's motion to dismiss and went forward into discovery.

### *The July 2019 emailed off-the-record motion for nolle pros.*

Ms. Bonilla appears to base her allegation the Credit Union knew in July 2019 of a *nolle pros* from the transcript of the March 11, 2020 status conference with Assistant District Attorney Melody Reynolds and Leon Goodman, Ms. Bonilla's counsel in the criminal matter.[13] Assistant District Attorney Reynolds advised the court:

> Your Honor, if I may, back in -- I actually just found out about this. I don't have the file on me but at some point in the summer, the Commonwealth actually filed a motion to *nolle pros* with Judge Zito when he -- and I sent it by email and I asked if it could be

signed that way and then I guess in the interim he retired; so I actually was under the impression this was *nolle prossed*. I would just ask if I could orally *nolle pros* this matter based on that.[14]

The court agreed to grant the *nolle pros* motion on the record and asked Attorney Goodman if he agreed. Attorney Goodman responded:

> Yes, Your Honor. I was notified early of the Commonwealth's attempt this past summer and I guess with the retirement of Judge Zito . . .[15]

> THE COURT: Judge Zito's retirement caused problems and not just here but he retired and never seemed to bother to let people know about it at certain times so . . . [16]

The transcript shows as of March 11, 2020, Assistant District Attorney Reynolds believed the Commonwealth moved to *nolle pros* in the summer of 2019 when she emailed the motion to Judge Zito[17] and "asked if it could be signed that way"; Judge Zito retired without granting the emailed motion; and she believed the matter had been *nolle prossed* and only "just found out" in March 2020 it had not been. There is no entry on the criminal docket showing the Commonwealth moved to *nolle pros* in the summer of 2019.[18] The docket instead reflects Ms. Bonilla's criminal counsel Attorney Goodman moved for Dismissal on June 21, 2019, but she does not provide us with the motion to determine if it is related to the *nolle pros*.[19]

In her Motion for summary judgment, Ms. Bonilla asserts she learned the District Attorney intended to dismiss the charges against her when Assistant District Attorney Reynold's unnamed "Supervisor" called Ms. Bonilla "directly in July 2019."[20] There is no evidence Attorney Goodman followed up on the call received by Ms. Bonilla or any explanation why the unnamed Supervisor called Ms. Bonilla directly rather than Attorney Goodman who represented her.

Ms. Bonilla conceded at her deposition she does not have information to show the District Attorney's office contacted the Credit Union between July 2019 and March 2020:

> Q. My question is this, between July of 2019 until March of 2020, do you have any information to show that the District Attorney's Office contacted American Heritage Federal Credit Union?
>
> A. I have no knowledge.[21]

### The Credit Union checked the status of the criminal action in October 2019.

In response to Ms. Bonilla's Motion for summary judgment, the Credit Union submitted the affidavit of Tracey Holmes, a Credit Union fraud investigator assigned to investigate the suspected fraudulent transfers between Ms. Bonilla's account and another shareholder's account in August 2016.[22] Ms. Holmes swears before leaving the employ of the Credit Union in October 2019, she searched the criminal docket of Ms. Bonilla's criminal case and found the case listed as active.[23] Ms. Holmes swears during her employment with the Credit Union she "had no knowledge the District Attorney's Office would not complete its prosecution of the criminal charges filed against [Ms.] Bonilla."[24]

### The Credit Union receives dispute notices from Experian in December 2019.

On December 6, 2019, credit reporting agency Experian submitted two "Automated Consumer Dispute Verification" ("ACDV") to the Credit Union through the "e Oscar" system on behalf of Ms. Bonilla.[25] The first ACDV disputed a charge-off of $3,334 on Ms. Bonilla's account at the Credit Union. The second ACDV disputed a charge-off of $1,904 on Ms. Bonilla's account at the Credit Union.[26] The reason for the dispute on both amounts indicated: "040 - Account involved in litigation. Provide complete ID and verify all account information."[27]

Credit Union employees, including a fraud investigator, emailed each other on December 11, 2019 regarding Experian's inquiry into Ms. Bonilla's account. Referring to Ms. Bonilla's

accounts, one employee states: "If it's still under litigation, I believe it should stay reporting."[28] An email from a Credit Union fraud investigator stated: "I was not aware of the activity on the noted account. I was just made aware of a case folder for Ms. Bonilla."[29] An email from a Credit Union quality control record retention specialist stated: "Please keep an eye out for how this conversation ends. I want to make sure we know what the outcome is so we can check the credit reporting info! Let me know if you have any issues or questions!"[30]

On December 17, 2019, the Credit Union responded to the ACDVs by correcting Ms. Bonilla's address. With regard to the disputed charged-off amounts, the Credit Union responded: "24 - Change-Cons disp not specific: ID verified. Acct info verified."[31] The Credit Union used a compliance code indicating: "Completed Investigation of FCRA dispute - consumer disagrees."[32]

On December 18, 2019, Experian sent Ms. Bonilla a letter with the results of her dispute.[33] Experian reported the Credit Union completed its investigation and did not change its position on the disputed charged-off amounts.[34]

### Ms. Bonilla requests reinvestigation and files renewed disputes immediately after the March 11, 2020 nolle pros.

Approximately three months later on March 11, 2020, the Philadelphia County Court of Common Pleas held a status conference in Ms. Bonilla's criminal action with Assistant District Attorney Reynolds and Ms. Bonilla's counsel Attorney Goodman. Assistant District Attorney Reynolds orally moved for a *nolle pros* and the court granted it, effectively dismissing all criminal charges against Ms. Bonilla.

Ms. Bonilla immediately filed a request to reinvestigate the fraud charges with ChexSystems citing the Philadelphia County Court of Common Pleas' *nolle pros* order.[35] The

Credit Union investigated and corrected the report twenty days later; on April 2, 2020, the Credit Union completed its reinvestigation after learning of the *nolle pros* and indicated its basis for alleging fraud is inaccurate and should be removed from Ms. Bonilla's credit report.[36] On April 5, 2020, ChexSystems advised Ms. Bonilla the Credit Union removed reference to the fraud charges from her account as a result of the reinvestigation.[37]

On March 19, 2020, Ms. Bonilla filed a dispute with Trans Union through the e-Oscar system challenging the Credit Union's continued reporting of her account as charged-off overdrawn account.[38] The same day, Viola Porter of the Credit Union prepared a "draft" response to the Trans Union dispute notice responding: "01:Account information accurate as of date reported."[39] The Credit Union does not explain its draft response Ms. Bonilla's account information is accurate.

On March 25, 2020, the Credit Union received notice of Ms. Bonilla's dispute filed with Experian through the e-Oscar system.[40] On April 3, 2020, Katelyn Regitko of the Credit Union prepared a "draft" response to the Experian dispute notice responding: "07:Delete due to Fraud."[41]

Whatever the documents show, there is no dispute Ms. Bonilla swore: the relief she sought from the Credit Union on March 11, 2020 immediately after the *nolle pros* order is the deletion of its reporting; as of April 2, 2020, she received the relief she requested from the Credit Union; and she is not contesting the reasonableness of the Credit Union's investigation between March 11 and April 2, 2020:

> Q. When you submitted the dispute on or about March 11, 2020, was the relief that you were seeking the deletion of the report?
>
> A. Yes.

Q. So on April 2nd, 2020, you obtained the relief that you wanted when you made the complaint, the dispute, on March 11 of 2020, correct?

A. That is correct.

. . .

Q. Are you contesting the reasonableness of the investigation that was done by American Heritage Federal Credit Union between March 11th and April 2nd of 2020?

A. No.[42]

## II.    Analysis

The parties cross-move for summary judgment.[43] Ms. Bonilla argues she is entitled to summary judgment on her furnisher liability claim against the Credit Union for failing to conduct a reasonable investigation into her disputed charged-off account. Ms. Bonilla argues the Credit Union violated the furnisher liability section of the Act when it failed to contact the District Attorney's office beginning in July 2019.  She argues the Credit Union continued to violate the Act by failing to contact the District Attorney's office in December 2019 after she submitted two disputes to Experian. Ms. Bonilla argues a reasonable investigation required the Credit Union to contact the District Attorney's office at any time after July 2019 to determine the status of the criminal action against her.

The Credit Union argues it is entitled to summary judgment because it complied with its duty as a furnisher, conducting a reasonable investigation based on the disputes sent by credit reporting agencies, and providing accurate information. It argues Ms. Bonilla did not adduce evidence it somehow knew about an alleged email sent by an assistant district attorney to a retired judge seeking to *nolle pros* until notified immediately after the *nolle pros* order in March 2020; it conducted a reasonable and accurate investigation in December 2019 which confirmed the Court has not dismissed the case; and, after receiving the Philadelphia Court of Common

8

Pleas *nolle pros* order in March 2020, timely responded to Ms. Bonilla's request for reinvestigation by deleting the disputed charged-off accounts.

    **A.    Congress imposes investigation obligations upon furnishers like the Credit Union.**

Congress, through section 1681s-2(b) of the Act, imposes certain duties on "furnishers of information." A "furnisher" is an "entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report."[44] There is no dispute the Credit Union is a furnisher under the FCRA.

A "furnisher," "after receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, . . . shall—

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
>> (i)  modify that item of information;
>>
>> (ii) delete that item of information; or
>>
>> (iii) permanently block the reporting of that item of information."[45]

Section 1681s-2(b) is the only section of the Act through which Congress provides a consumer with a private right of action for damages against a furnisher.[46] "[A] private citizen

wishing to bring an action against a furnisher must first file a dispute with the consumer reporting agency, which then must notify the furnisher of information that a dispute exists. Only after this notification can the furnisher face any liability to a private individual."[47] "Under the statutory framework and clear language of the statute, therefore, a consumer must first alert the credit reporting agency that reported the allegedly erroneous information of a dispute. It is then up to the reporting agency to inform the furnisher of information that there has been a dispute, thereby triggering the furnisher's duty to investigate. It is only when the furnisher fails to undertake a *reasonable investigation* following such notice that it may become liable to a private litigant under § 1681s–2(b)."[48]

A reasonable procedure is one "'that a reasonably prudent person would undertake under the circumstances.'"[49] "[W]hen assessing reasonableness, the factfinder must balance 'the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy.'"[50] The reasonableness of an investigation "is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question."[51] Ms. Bonilla carries the burden of showing the Credit Union's investigation is unreasonable.[52]

Furnishers like the Credit Union are required to investigate disputes sent to them by credit reporting agencies. The Credit Union's duty to investigate is triggered only after notice from a credit reporting agency such as Experian, Trans Union, and ChexSytems.[53] Once a furnisher like the Credit Union investigates a dispute, it must: "1) report the result of the investigation to the [credit reporting agency]; 2) report those results to all other [credit reporting agencies] to which the furnisher provided the information if the investigation discloses that the information is incomplete or inaccurate; and 3) promptly modify, delete, or block the reporting of that item of disputed information found to be inaccurate, incomplete, or unverifiable."[54]

10

**B.     There is no evidence the Credit Union violated its duty to investigate.**

Only one of Ms. Bonilla's claims against the Credit Union is before us on summary judgment: whether the Credit Union fail to reasonably investigate disputes in July 2019 and December 2019.  The undisputed record confirms the Credit Union did not violate its duty of reasonable investigation under section 1681s-2(b) of the Act.

Ms. Bonilla alleged the Credit Union knew in July 2019 the District Attorney intended to *nolle pros* charges against her but nonetheless deliberately continued to furnish information to credit reporting agencies the charged-off amounts on her account; the Credit Union reported more than what is owed on her savings share account to Chex Systems; and the Credit Union continued to inaccurately furnish information to credit reporting agencies through March 2020.[55]

There is no evidence the Credit Union knew of the *nolle pros* in July 2019. There is no entry on the docket in the criminal case against Ms. Bonilla of a *nolle pros* until March 11, 2020. While Ms. Bonilla asserts <u>she</u> learned the District Attorney intended to dismiss the charges against her when Assistant District Attorney Reynolds's unnamed "Supervisor" called Ms. Bonilla "directly in July 2019," there is no evidence of this call. Ms. Bonilla cannot identify the alleged supervisor or contacts she made after this alleged call to others confirming this call.  Ms. Bonilla knows how to dispute and litigate; she already challenged this conduct.  But there is no evidence she did anything after this alleged call.  And at her deposition, Ms. Bonilla had no knowledge or information to show the District Attorney contacted the Credit Union regarding a *nolle pros*.[56] Thus even assuming a question of credibility as to whether a supervisor prosecutor violated the code of ethics by calling Ms. Bonilla directly (even though she retained counsel), there is no question the District Attorney did not call the Credit Union.

11

There is no evidence the Credit Union received a dispute from a credit reporting agency in July 2019. Congress triggered the Credit Union's duty to investigate only after notice from a credit reporting agency. There is no evidence of a credit dispute in July 2019.

Perhaps realizing the evidentiary record does not support her argument the Credit Union failed to conduct a reasonable investigation in July 2019, Ms. Bonilla focuses on the two ACDV (credit disputes) from Experian. There is no dispute the Credit Union received two ACDV forms from Experian on behalf of Ms. Bonilla on December 6, 2019 on two accounts.[57] On both ACDVs, the dispute code indicates: "Account involved in litigation. Provide complete ID and verify all account information."

By December 2019, we already dismissed Ms. Bonilla's first civil action against the Credit Union.[58] No civil litigation remained pending in December 2019. The Credit Union argues the December 6, 2019 ACDVs "did not mention the status of [Ms. Bonilla's] criminal or any pending decision in the criminal case. It referenced [Ms. Bonilla's] civil case against [the Credit Union] but provided nothing to suggest that the dismissed civil litigation affected the accuracy of the [Credit Union] records."[59] The Credit Union argues our April 4, 2019 memorandum dismissing Ms. Bonilla's first action "addressed and confirmed the factual accuracy of [Ms. Bonilla's] overdrawn, charged-off accounts" and "nothing in the notice suggests that the bare statement 'account involved in litigation' might refer to [Ms. Bonilla's] then ongoing criminal case."[60]

Congress required the Credit Union, after being notified of a dispute by Experian, to "conduct an investigation with respect to the disputed information."[61] Even if the dispute code indicating litigation pertained to the criminal action against Ms. Bonilla and not civil litigation, a search of the Philadelphia County Court of Common Pleas docket would not have shown a *nolle*

*pros* of criminal charges against Ms. Bonilla. Ms. Bonilla admits the Philadelphia Court of Common Pleas did not *nolle pros* the criminal action until March 11, 2020.

Ms. Bonilla argues a reasonable investigation required the Credit Union to contact the Assistant District Attorney's Office to verify the status of the criminal investigation. She presumes a call to the District Attorney's Office would have revealed Assistant District Attorney Reynolds emailed a motion for *nolle pros* to Judge Zito but the motion fell through the cracks when Judge Zito retired. There is no authority for the proposition a reasonable investigation includes contacting the District Attorney for an update on a pending criminal matter brought by the Commonwealth against a consumer. The Credit Union has the right, as we all do, to rely on accurate public dockets. Rumors and stories of emailed motions or possible actions is not an accurate fact.

Ms. Bonilla argues the Credit Union "has not produced any documents or statements from Assistant District Attorney Melanie Reynolds, her supervisor or the District Attorney for Philadelphia Lawrence Krasner at any time during discovery and/or their answer to Plaintiff's complaint and/or amended complaint."[62] But it is Ms. Bonilla's burden to show the Credit Union's investigation is unreasonable for failing to contact the District Attorney's office; it is not the Credit Union's burden to produce "documents or statements" from the District Attorney's office as part of an investigation into a *nolle pros* that had not been ruled on by the Philadelphia County Court of Common Pleas.

Congress, in section 1681s-2(b) of the Act, requires Ms. Bonilla to show "actual inaccuracies . . . a furnisher's objectively reasonable investigation would have been able to discover."[63] The Credit Union is "neither qualified nor obligated to resolve matters that turn on questions that can only be resolved by a court of law."[64] "A furnisher is not required to uncover

13

and correct *all* inaccuracies on the consumer's credit report. Rather, a furnisher is required to correct only those inaccuracies it discovers during its reasonable investigation. Accordingly, a furnisher cannot be held liable for failing to correct those inaccuracies its reasonable investigation fails to uncover."[65]  The Credit Union also cannot be liable for an inaccuracy based on some rumor or representation of a prosecutor emailing a motion to a judge off-the-record. Even if the prosecutor did so in some form of ex parte communication, the judge never ruled.  A prosecutor's motion to *nolle pros* is not an order dismissing a case.

The Credit Union conducted a reasonable investigation upon receiving the ACDVs from Experian in December 2019.

It also conducted a reasonable investigation in March 2020 in response to a reinvestigation request from Chex Systems, Trans Union, and Experian immediately after the entry of the *nolle pros* in the Philadelphia County Court of Common Pleas. There is no dispute on April 5, 2020, ChexSystems advised Ms. Bonilla the Credit Union removed reference to the fraud charges from her account as a result of the reinvestigation.[66] For reasons not explained, the Credit Union did not correct the account information on the March 19, 2020 Trans Union dispute.  But on April 3, 2020, the Credit Union deleted the charged-off amounts from Ms. Bonilla's accounts "due to fraud" in response to the March 25, 2020 Experian dispute. [67]

The Credit Union argues under e-Oscar procedures, once the Credit Union deleted the charged-off amounts from Ms. Bonilla's account in response to the Experian dispute, the e-Oscar system would send the response to each credit reporting agencies and all agencies using the e-Oscar system would be notified of the deletion. Ms. Bonilla does not provide argument or record evidence otherwise. She concedes the Credit Union properly corrected its information as of April 2020.

14

There is no genuine issue of material fact the Credit Union conducted a reasonable investigation of Ms. Bonilla's disputes before and after the state court entered the *nolle pros* order. We deny Ms. Bonilla's motion for summary judgment, including her demand for punitive damages, grant the Credit Union's motion for summary judgment, and enter judgment in favor of the Credit Union. [68]

## III.    Conclusion

After review of the record, Ms. Bonilla fails to meet her burden either on her affirmative motion for summary judgment or to meet her burden to defeat the Credit Union's summary judgment. We deny her motion for summary judgment and her claim for punitive damages. In the accompanying order, we grant the Credit Union's motion and enter judgment in its favor.

---

[1] Ms. Bonilla has been extraordinary active in pursuing her rights. She filed four pro se lawsuits against the Credit Union and its agents since August 2018. We earlier dismissed most of her pro se claims and consolidated two cases before us in this action. After parsing Ms. Bonilla's complaints and amended complaints asserted against the Credit Union and its agents in multiple lawsuits alleging violations of multiple federal consumer protection and banking statutes and common law tort claims, we dismissed all of Ms. Bonilla's claims except a single furnisher liability claim against the Credit Union under the Fair Credit Reporting Act. *Bonilla v. American Heritage Federal Credit Union*, No. 20-2276, 2020 WL 3971404 (E.D. Pa. July 14, 2020). This is the only claim we review now on the parties' cross-motions for summary judgment. The entire procedural history of Ms. Bonilla's actions against the Credit Union and its now dismissed agents can be found in our memoranda in *Bonilla v. American Heritage Federal Credit Union*, No. 20-2276, 2020 WL 3971404 (E.D. Pa. July 14, 2020) and *Bonilla v. American Heritage Federal Credit Union*, No. 20-2053, 2020 WL 2539197 (E.D. Pa. May 19, 2020).

Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. On all cross-motions under Rule 56, the cross-movants must consult before filing to prepare a joint appendix. We require all pages to be consecutively Bates stamped and referenced in the motions and briefs by the Bates number assigned each page. The parties failed to do so here, instead filing appendices and exhibits in four different filings creating a cumbersome, and often duplicative, patchwork of documents a joint appendix is designed to avoid. We excuse the parties' failure to follow our Polices because Ms. Bonilla

proceeds pro se but remind counsel and pro se litigants to read and comply with the Court's Policies.

Credit Union filed its Motion for summary judgment at ECF Doc. No. 51; brief in support of summary judgment at ECF Doc. No. 51-2; Statement of Undisputed Material Fact ("SUMF") at ECF Doc. No. 51-3; and Appendix at ECF Doc. No. 52. Ms. Bonilla filed a response brief at ECF Doc. No. 56; response to the Credit Union's SUMF at ECF Doc. No. 56-1; and "exhibits" at ECF Doc. No. 56-2 through 56-6.

Ms. Bonilla filed her Motion for summary judgment at ECF Doc. No. 50 and brief in support of summary judgment at ECF Doc. No. 50-1. She did not file a Statement of Undisputed Material Fact. Ms. Bonilla filed "exhibits," which we construe as her appendix, at ECF Doc. No. 50-2 through 50-8. The Credit Union responded to Ms. Bonilla's Motion at ECF Doc. No. 55 and attached additional exhibits at ECF Doc. No. 55-3 through 55-5.

[2] ECF Doc. No. 10 ¶ 10.

[3] *Id.* ¶ 12.

[4] *Id.*

[5] *Id.* ¶ 10.

[6] ECF Doc. No. 51-3, Credit Union SUMF ¶ 2.

[7] *Id.* ¶ 3.

[8] *Id.* ¶ 4.

[9] *Id.* ¶ 5; *Bonilla v. American Heritage Federal Credit Union*, No. 18-3293, ECF Doc. No. 57.

[10] Ms. Bonilla filed an action here at No. 20-2053 and in the Philadelphia County Court of Common Pleas, which the Credit Union removed at No. 20-2276. On May 26, 2020, we consolidated the two actions into the present action before us at No. 20-2276 and closed action No. 20-2053. *See Bonilla v. American Heritage Federal Credit Union*, No. 20-2053 at ECF Doc. No. 14.

[11] ECF Doc. No. 50-4.

[12] *Bonilla*, 2020 WL 3971404 at * 7.

[13] Under Pennsylvania law, "[a] nolle prosequi is a voluntary withdrawal by the prosecuting attorney of present proceedings on a particular bill of indictment." *Commonwealth v. Goldman*, 70 A.3d 874, 878 (Pa. Super. Ct. 2013) (citing *Commonwealth v. Whitaker*, 359 A.2d 174, 177

(Pa. 1976)). Under Pennsylvania Rule of Criminal Procedure 585, "[u]pon motion of the attorney for the Commonwealth, the court may, in open court, order a nolle prosequi of one or more charges notwithstanding the objection of any person"). Pa. R. Crim. P. 585(A).

[14] ECF Doc. No. 50-4 at 4 (using the pagination assigned by the CM/ECF docketing system).

[15] *Id.* at 5.

[16] *Id.*

[17] *See* ECF Doc. No. 57-3 at 11 (using the pagination assigned by the CM/ECF docketing system).

[18] *Id.*

[19] *Id.*

[20] ECF Doc. No. 50-1 ¶ 42.

[21] ECF Doc. No. 52-1, Appendix 25.

[22] ECF Doc. No. 55-4, Appendix 99-100. Ms. Holmes is formerly known as Tracey Rambo.

[23] *Id.* ¶¶ 7-8.

[24] *Id.* ¶ 9.

[25] ECF Doc. No. 52-1, Appendix 47; ECF Doc. No. 51-3, Credit Union SUMF ¶¶ 13-23. According to its website, "e-OSCAR is a web-based, Metro2 compliant, automated system that enables Data Furnishers (DFs), and Credit Reporting Agencies (CRAs) to create and respond to consumer credit history disputes. CRAs include Equifax, Experian, Innovis and TransUnion, their affiliates or Independent Credit Bureaus and Mortgage Reporting Companies. e-OSCAR also provides for DFs to send "out-of-cycle" credit history updates to CRAs. . . . ACDVs initiated by a CRA on behalf of a consumer are routed to the appropriate Data Furnisher based on the CRA and subscriber code affiliations indicated by the DF. The ACDV is returned to the initiating CRA with updated information (if any) relating to the consumer's credit history. If an account is modified or deleted, Carbon Copies are sent to each CRA with whom the DF has a reporting relationship." *See https://www.e-oscar.org/getting-started/about-us. See also Van Veen v. Equifax Information*, 844 F. Supp. 2d 599, 603-04 (E.D.Pa. 2012) ("when a consumer contacts a [Credit Reporting Agency] about a dispute regarding credit reporting, the agency transmits the disputed information to the furnisher of credit information via an Automated Consumer Dispute Verification through the e-OSCAR system.").

[26] ECF Doc. No. 52-1, Appendix 48; ECF Doc. No. 51-3, Credit Union SUMF ¶ 24.

---

[27] ECF Doc. No. 52-1, Appendix 47; ECF Doc. No. 51-3, Credit Union SUMF ¶ 24.

[28] ECF Doc. No. 52-1, Appendix 72.

[29] ECF Doc. No. 52-1, Appendix 75.

[30] ECF Doc. No. 52-1, Appendix 55.

[31] ECF Doc. No. 52-1 Appendix 47-48; ECF Doc. No. 51-3, Credit Union SUMF ¶¶ 25-26.

[32] ECF Doc. No. 52-1, Appendix 47-48; ECF Doc. No. 51-3, Credit Union SUMF ¶¶ 27-29.

[33] ECF Doc. No. 52-1, Appendix 49-54.

[34] ECF Doc. No. 52-1, Appendix 49-54.

[35] ECF Doc. No. 52-1, Appendix 78-84. Under section 1681i of the FCRA, "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." 15 U.S.C. § 1681i(a)(1)(A).

Under section 1681i(a)(5)(A), "[i]f after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall-- (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681i(a)(5)(A).

According to its website, "Chex Systems, Inc. (ChexSystems) is a nationwide specialty consumer reporting agency under the federal Fair Credit Reporting Act (FCRA). ChexSystems' clients regularly contribute information on closed checking and savings accounts. ChexSystems provides services to financial institutions and other types of companies that have a permissible purpose under the FCRA. ChexSystems' services primarily assist its clients in assessing the risk of opening new accounts."
https://www.chexsystems.com/web/chexsystems/consumerdebit/otherpage/AboutChexSystems

[36] ECF Doc. No. 52-1, Appendix 83-84.

[37] ECF Doc. No. 52-1, Appendix 78.

[38] ECF Doc. No. 52-1, Appendix 95; ECF Doc. No. 51-3, Credit Union SUMF ¶ 34; ECF Doc. No. 56-1, Bonilla's response to SUMF ¶ 34.

[39] ECF Doc. No. 52-1, Appendix 95. Congress requires "if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation . . . , for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly . . . (ii) delete that item of information." 15 U.S.C. § 1681s-2(b)(1)(E)(ii). The Credit Union contends once it deleted the information on Ms. Bonilla's account on April 3, 2020, "[a]ll consumer reporting agencies which use e-Oscar would have been notified of this deletion." ECF Doc. No. 51-3, Credit Union SUMF ¶ 39. The Credit Union cites a printout from the e-Oscar website supporting this assertion. Ms. Bonilla responded only she cannot speak for the e-Oscar system. ECF Doc. No. 56-1 ¶ 39.

[40] ECF Doc. No. 52-1, Appendix 97; ECF Doc. No. 51-3, Credit Union SUMF ¶ 36.

[41] ECF Doc. No. 52-1, Appendix 97-98; ECF Doc. No. 51-3, Credit Union SUMF ¶ 38; ECF Doc. No. 56-1, Bonilla's response to SUMF ¶ 38.

[42] ECF Doc. No. 52-1, Appendix 20.

[43] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)).  On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

"This standard does not change when the issue is presented in the context of cross-motions for summary judgment." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)). "When both parties move for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in

accordance with the Rule 56 standard.'" *Auto-Owners Ins. Co.*, 835 F.3d at 402 (quoting 10A Charles Alan Wright et al., FEDERAL PRACTICE & PROCEDURE § 2720 (3d ed. 2016)).

[44] 16 C.F.R. § 660.2(c).

[45] 15 U.S.C. § 1681s-2(b).

[46] *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011) (citing *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008)).

[47] *SimmsParris*, 652 F.3d at 359.

[48] *Id.* (emphasis added).

[49] *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010)).

[50] *Tauro v. Capital One Fin. Corp.*, 684 F. App'x 240, 242 (3d Cir. 2017) (quoting *Seamans*, 744 F.3d at 865).

[51] *Id.* (quoting *Cortez*, 617 F.3d at 709).

[52] *Chiang*, 595 F.3d at 37 (citations omitted).

[53] *Van Veen v. Equifax Information*, 844 F.Supp.2d 599, 604 (E.D.Pa. 2012) (citing 15 U.S.C. 1681s-2(b)).

[54] *Id.* at 605 (citing 15 U.S.C. § 1681s-2(b)).

[55] ECF Doc. No. 10 ¶¶ 27-31.

[56] Ms. Bonilla apparently did not depose or speak with Assistant District Attorney Reynolds. Ms. Bonilla now tells us she will subpoena the prosecutor as a trial witness apparently believing Assistant District Attorney Reynolds will support her argument the Credit Union failed to contact her in July 2019 or December 2019.  No one disputes the Credit Union did not contact Ms. Bonilla; we are aware of no obligation for it do so then. As the movant for summary judgment, Ms. Bonilla has the burden of demonstrating the evidentiary records presents no genuine issue of material fact. As the non-moving party in the Credit Union's motion for summary judgment, Ms. Bonilla must identify facts in the record to enable her to make a sufficient showing on the essential elements of her case on which she carries the burden of proof.

[57] ECF Doc. No. 52-1 at Appendix 47-54. The Credit Union contends the December 6, 2019 ACDV forms from Experian "attached this Court's November 26, 2018, memorandum opinion in Bonilla I which dismissed with prejudice all claims relating to the August 2016 transactions and allowed Plaintiff to file an amended complaint to plead timely and plausible claims regarding the overdraft protection transaction." *See* ECF Doc. No. 51 at 15, citing its appendix at ECF Doc. No. 52-1 at 47 through 54. A review of those pages in the appendix, do not show as attached our November 26, 2018 memorandum in Ms. Bonilla's first action against the Credit Union. Our November 26, 2018 memorandum appears at appendix page 61 (ECF Doc. No. 52-2) after the Experian March 25, 2020 dispute.

[58] *See Bonilla v. Credit Union*, No. 18-3293, April 4, 2019 Order at ECF Doc. No. 57.

[59] ECF Doc. No. 51-2 at 15.

[60] ECF Doc. No. 51-2 at 15-16.

[61] *Krajewski v. American Honda Finance Corp.*, 557 F.Supp.2d 596, 609 (E.D.Pa. 2008) (quoting 15 U.S.C. § 1681s-2(b)(1)(A)).

[62] ECF Doc. No. 50-1 ¶ 7.

[63] *Van Veen*, 844 F.Supp.2d at 605.

[64] *Id.* (quoting *Chiang*, 595 F.3d at 38).

[65] *Id.* (emphasis in original).

[66] ECF Doc. No. 52-1, Appendix 78.

[67] ECF Doc. No. 52-1, Appendix 97-98; ECF Doc. No. 51-3, Credit Union SUMF ¶ 38; ECF Doc. No. 56-1, Bonilla's response to SUMF ¶ 38.

[68] Ms. Bonilla continues to challenge the facts underlying August 2016 transactions leading to the criminal fraud charges. As we made clear in our earlier decisions, we are not litigating the criminal action. Ms. Bonilla's references to section 1681e(b) are inapplicable. *See e.g.* ECF Doc. No. 50-1 at 5-7. Section 1681e(b) pertains to the accuracy of credit reports prepared by credit reporting agencies, not furnishers like the Credit Union, and is inapplicable here.